392 So.2d 931 (1980)
CENTRAL HOME TRUST COMPANY OF ELIZABETH, Appellant,
v.
John T. LIPPINCOTT and Nancy L. Lippincott, Appellees.
No. 80-434.
District Court of Appeal of Florida, Fifth District.
December 17, 1980.
Rehearing Denied January 23, 1981.
*932 Barry R. Nager, Orlando, for appellant.
William A. Greenberg, Orlando, for appellees.
SHARP, Judge.
The plaintiff, Central Home Trust Company of Elizabeth, New Jersey, appeals from a summary judgment entered against it denying any recovery. Central sued the defendants, the Lippincotts, as makers or obligors of an installment promissory note executed in New Jersey. The trial court held the suit was barred by Florida's five year statute of limitations[1] because Central had charged off the Lippincott debt on its books more than 5 years before the suit was filed. We reverse because there is no basis for applying the statutory bar in this case.
On May 5, 1973, the Lippincotts executed an installment promissory note in Elizabeth, New Jersey, payable to Central. The total debt was $3,445.56, payable in monthly installments of $95.41 commencing July 10, 1973, and if paid according to the terms of the note, the last installment of $95.41 would have been due on June 10, 1976. The note contained an acceleration clause allowing the holder to make all payments "immediately due and payable, at the election of the Bank, and without notice to the undersigned, in the event any installment was not paid when due... ." The Lippincotts failed to pay the installment payment due October 10, 1973, and defaulted on the balance of the payments as well.
Central filed suit in Florida on the note on September 13, 1979, claiming a balance due of $2,923.62, plus interest and other costs. The defendants moved for summary judgment and for judgment on the pleadings on the sole ground that the 5 year statute of limitations barred the suit. The Lippincotts argued the five year statute of limitations commenced to run when the bank charged off the loan, and they placed in the record a letter they received from Central dated May 10, 1979. The letter stated that the Lippincotts owed Central $3,445.56 on the note and that the Bank had "charged off" the loan on March 25, 1974. It explained "when a bank charges a loan off that means they write it off their books as a total loss." The letter also indicated the Lippincotts left New Jersey without *933 giving Central their forwarding address, and the Bank had just "located" them in Florida.[2]
The statute of limitations begins to run a promissory note when a cause of action accrues against the maker or obligor.[3] The UCC provides that for a "time instrument"[4] a cause of action against the maker or acceptor accrues on the day after maturity.[5] Installments due at different times under a note mature or accrue the day after each is due to be paid, and the statute of limitations may run on some and not others.[6] Applying these rules to this case, the installments due in 1973 and some in 1974 may be barred by the statute of limitations, but the balance of the payments due in 1974, 1975 and 1976 would not be barred.
The statute of limitations may commence running earlier on an installment note for payments not yet due, if the holder exercises his right to accelerate the total debt because of a default or other reason.[7] However there is no basis to conclude in this case that the note was accelerated. Under the terms of this note, Central had the option of accelerating if a default occurred. Default by the makers alone could not accelerate the indebtedness. Baader v. Walker, 153 So.2d 51 (Fla.2d DCA), cert. denied 156 So.2d 858 (Fla. 1963). To constitute an acceleration after default, where the holder has the option to accelerate, the holder or payee of the note must take some clear and equivocal action indicating its intent to accelerate all payments under the note, and such action should apprise the maker of the fact that the option to accelerate has been exercised. 11 Am.Jur.2d Bills and Notes § 296 (1963). Examples of acceleration are a creditor's sending written notice to the debtor, making an oral demand, and alleging acceleration in a pleading filed in a suit on the debt. No such demand or notice was given in this case. By the time the suit was filed all sums were due under the terms of the note.
Central "charged off" the Lippincott loan as a bad debt in 1974, six months after it went into default. We reject the Lippincotts' argument that the act of charging off the remaining debt "accelerated" the balance. "Charge-off" is defined in Black's Law Dictionary as:
[A]nything manifesting intent to eliminate an item from assets. Write-off of asset or other item, e.g., uncollectible account, receivable or debt. To treat as a loss or expense an amount originally recorded as an asset: usually the term is used when the charge is not in accord with original expectations.
Often charge-offs are required by bank examiners or banking laws and regulations. The process has nothing to do with contacting the debtor and demanding the total debt be paid. It is strictly a bookkeeping or accounting procedure within the bank or loan company. It is not more plausible to say a bank has "forgiven" a debt because it was "charged off" than to say it "accelerated" the debt when it was "charged off." Neither has nothing to do with the charge off process.
In similar contexts when the payee of a note has been required by law to present a claim for payments not yet due, such as in bankruptcy proceedings or probate matters, the courts hold that acceleration does not *934 occur. 11 Am.Jur.2d Bills and Notes § 296 (1963).
This rule is based on the theory that the provision is primarily for the benefit of the holder, who can exercise or waive his right as he wishes, since he should be free to decide whether he requires protection under the circumstances of the particular default, and that the obligor should not be entitled to take advantage of his own wrong and cause an automatic change of maturity.
11 Am.Jur.2d Bills and Notes § 294, p. 319 (1963).
For the reasons stated herein, the judgment is reversed and the case is remanded.
REVERSED and REMANDED.
DAUKSCH, C.J., and ORFINGER, J., concur.
NOTES
[1] Section 95.11(2)(b), Florida Statutes (1979) sets a 5 year period for suits involving "a legal or equitable action on a contract, obligation, or liability founded on a written instrument." The applicable statute of limitations clearly is section 95.11(2)(b), Florida Statutes (1979). Central originally sought to rely on a New Jersey statute. However, it is well established that the forum state's statute of limitations is generally applicable. Brown v. Case, 80 Fla. 703, 86 So. 684 (1920); 12 Am.Jur.2d Bills and Notes § 1039 (1964); 11 Am.Jur.2d Bills and Notes § 99 (1963). Section 95.10, Florida Statutes, which provides an exception to this general rule, is not applicable. Brown v. Case, supra.
[2] Whether or not section 673.122(1), Florida Statutes (1979) may have tolled the statute was not raised by the parties; it is not necessary to consider this point in reaching a decision.
[3] 12 Am.Jur.2d Bills and Notes § 1054 (1964).
[4] § 673.109(1)(c), Florida Statutes (1979).
[5] § 673.122(1)(a), Florida Statutes (1979).
[6] General Capital Corporation v. Tel Service Co., 212 So.2d 369 (Fla.2d DCA 1968), modified, 227 So.2d 667 (Fla.App., 1969). 12 Am.Jur.2d Bills and Notes §§ 1030, 1036, 1054 (1964); 21 Fla.Jur. Limitations of Actions §§ 43, 42 (1958).
[7] Motel Management Company, Inc. v. Winger, 335 So.2d 9 (Fla. 4th DCA 1976); Federal Home Mortgage Corp. v. Taylor, 318 So.2d 203 (Fla. 1st DCA 1975), 12 Am.Jur.2d Bills and Notes § 1047 (1964); 11 Am.Jur.2d Bills and Notes § 294 (1963); 6 Fla.Jur.2d Bills and Notes § 272 (1978).