SCHEB, Acting Chief Judge.
Appellant, Michael J. Miceli, challenges a final judgment finding him liable to appel-lees for $42,738.08 plus interest as a result of his default on several promissory notes. We affirm in part and reverse in part.
On February 24, 1983, Miceli executed collateral promissory notes in favor of ap-pellees Bonita Springs Golf Course, Ltd. (Bonita Springs), Blossom, Inc., George Merrell, and George Wilson. Pursuant to a security agreement, Miceli pledged to Bonita Springs, Blossom, Inc., Merrell, and Wilson a $1,103,000 installment note and mortgage on real property in Illinois to secure his obligation on the aforementioned collateral promissory notes.
Miceli’s note to Bonita Springs in the amount of $368,550 called for six annual payments of $61,208.33. Miceli failed to make the first principal payment that was due on February 24, 1984, and on January 28, 1985, Bonita Springs filed suit to foreclose the security agreement. Blossom, Inc., George Merrell, and George Wilson were joined as codefendants because of notes they held from Miceli. Also joined as codefendants were Vincent Palmieri, trustee of the Illinois installment note, and Lee County Bank, escrow agent for the note.
The collateral promissory notes provided that “in the event of default the holder of this Collateral Promissory Note agrees to *967 look solely to the Collateral for repay-ment_”
The security agreement provides:
In the event of a default by Debtor pursuant to any of the Collateral Promissory Notes, or the Offer to Purchase, the Secured Party is authorized to obtain from the Escrowee the Net Payments, as hereinafter described, made pursuant the Collateral, and to thereafter use the Net Payments to cure any defaults of the Secured Party pursuant to the Collateral Promissory Notes or the Offer to Purchase. For purposes of this Security Agreement, the term “Net Payments” shall mean the payments required to be made pursuant to the Installment Note, reduced by the payments of $5,146.00 per month to the holder of a certain $500,-000.00 Underlying Note issued during October, 1977.
Further, under “EVENTS OF DEFAULT,” the agreement stipulates:
The occurrence of any of the following events or conditions shall, at the option of the Secured Party, and after ten (10) days’ written notice or demand on the Debtor, constitute an event of default hereunder;
1.Default or delay in the payment or performance of any of Debtor’s Collateral Promissory Notes, or any other indebtedness secured hereby which shall not have been cured within five (5) days subsequent to the due date for any such payment;....
Codefendants Blossom, Inc., Merrell, and Wilson cross-claimed for foreclosure contending their interests were of equal dignity to that of Bonita Springs.
After a pretrial conference, the trial judge entered an order containing the following stipulations agreed to by all parties:
1. That the various promissory notes owed by Miceli were in default in the amounts due under each;
2. That Miceli had no personal liability under the notes, other than to the extent of the collateral; and
3. That the various noteholders had equal priority in the collateral and were entitled to certain percentages thereof.
The trial judge directed all claimants to submit memoranda of law and proposed final judgments. After considering the stipulations at the pretrial conference and memoranda of law, the trial judge entered a final judgment. The final judgment stated that Miceli had defaulted on the collateral promissory notes as of February 24, 1984, and that he was liable to Bonita Springs and codefendants in stated percentages for the sum of $42,738.08. This sum represented net payments of $3,052.72 per month Miceli had collected on the Illinois installment note since February 24, 1984, the date of his default as determined by the trial court. This timely appeal by Miceli ensued.
Miceli first contends the trial judge erred in entering a final judgment based on the pleadings and stipulations made at the pretrial conference. This contention is without merit.
Next, Miceli argues the trial court erred in holding that the payments made to him after February 24, 1984, were part of the “collateral.” Miceli does not contest the fact that the notes were in default. He argues, however, that he was not in default until mid-April 1985, a date ten days after written notice of default from counsel for several of the codefendants. Thus, he contends that he, not Bonita Springs, was entitled to the net payments he received until ten days after notice of default in April 1985. We agree with Miceli that appellees were not entitled to receive the net payments until ten days after notice of default to him. We do not agree, however, that the earliest date Miceli received notice of default was in April 1985.
Bonita Springs correctly points out that proceeds ordinarily follow collateral. § 679.306, Fla.Stat. (1985). Since the collateral here was the Illinois note, Bonita Springs argues that any payments made pursuant to that note would be part of the collateral under the security agreement. This argument, however, overlooks the specific language in the security agreement pertaining to events of default. As noted, *968 the agreement provided that default or delay in payment or performance of any of Miceli’s collateral promissory notes would constitute an event of default at the option of the secured party but only after 10 days written notice or demand on Miceli. Further, the security agreement contemplated that ten days after notice of default was given, all net payments as defined in the security agreement would be paid to an escrow agent.
Bonita Springs did not give Miceli written notice of default until it filed this action exercising its option to accelerate the sums due from him. Central Home Trust Co. of Elizabeth v. Lippincott, 392 So.2d 931, 933 (Fla. 5th DCA 1981); see Campbell v. Werner, 232 So.2d 252 (Fla. 3d DCA 1970). Service of the complaint on Miceli was on March 8, 1985. Since this was the first notice invoking the default provision, appel-lees were not entitled to receive the net payments otherwise due Miceli on the Illinois installment note until ten days after that date.
The trial court awarded appellees $42,-738.08, representing the net payments Miceli received from March 1984 thru April 1985. We hold that, in doing so, the court erred because appellees were entitled only to the net payments made subsequent to their invoking of the default provision in the security agreement. As noted, this occurred on service of the complaint on Mice-li. Thus, the court erred in awarding ap-pellees net payments received by Miceli prior to March 18, 1985, a date ten days after notice of default to Miceli.
Accordingly, we affirm the trial court’s final judgment filed July 24,1986, with two exceptions:
First, we vacate the court’s finding in paragraph 8 which states: “Since Defendant Miceli defaulted on February 24, 1984, all net payments made to him after that date are part of the security.” Second, we vacate that part of paragraph D which states:- “Defendant Miceli shall pay $42,-738.08....”
On remand, the trial court shall enter an amended final judgment finding that Miceli defaulted on March 8, 1985, and shall award judgment against him for any net payments he received subsequent to March 18, 1985, plus interest at the rate of 18% per annum as provided in the collateral promissory notes. Said judgment shall be payable to the parties in the percentages as set forth in paragraph D of the trial court’s final judgment.
Affirmed in part, reversed in part, and remanded with directions.
SCHOONOVER and THREADGILL*, JJ. concur.