733 So.2d 1111 (1999)
Douglas E. GREENE, Appellant,
v.
David BURSEY, Appellee.
No. 98-3138.
District Court of Appeal of Florida, Fourth District.
May 19, 1999.
*1112 Michael J. Keane and Brandon S. Vesely of Keane & Reese, P.A., St. Petersburg, for appellant.
Robert L. Young and Charlotte L. Warren of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Orlando, for appellee.
POLEN, J.
Douglas E. Greene timely appeals from the denial of his motion for rehearing following an adverse final summary judgment entered on David Bursey's complaint which sought payment under a written personal guaranty on a promissory note. Greene argues that fact questions remained with respect to whether Bursey had any legal right to enforce the guaranty, whether part of Bursey's claim was barred by the statute of limitations, and whether such claim was barred by the doctrine of laches. We affirm in part and reverse in part.

Facts
On March 27, 1984, Western World Real Estate, Inc. ("Western World") and Joli Hospitalities, Inc. ("Joli I") entered into a purchase agreement whereby Western World sold the Moorhead (Minnesota) Ramada Inn Hotel ("Hotel") to Joli I. As part of this agreement, Joli I issued a promissory note in the principal amount of $205,000 payable to Western World. The promissory note called for monthly payments to begin on January 1, 1985 and to end on September 30, 1985. The note, however, provided that "[a]t the sole option of the maker, final payment may be extended to March 30, 1987." The note was also personally *1113 guaranteed in writing by five of Joli I's principals, including Greene, Joli I's president. The guaranty provides, in pertinent part,
In order to induce Western World Real Estate, Inc., LENDER, to make a loan or loans, renewal or extension thereof, to Joli Hospitalities, Inc., DEBTOR, the undersigned hereby unconditionally guarantees to Lender, its successors, and assigns, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, of the principal of and interest on all other sums payable, or stated to be payable, with respect to top note of the Debtor, made by the Debtor to Lender dated March 30, 1984, in the principal sum not to exceed ... ($230,000.00) with interest at the rate of eleven percent (11%) per annum.
* * * *

The undersigned waives any notice of the incurring by the Debtor at any time of any of the liabilities, and waives any and all presentment, demand, protest or notice of dishonor, nonpayment or other default.... The undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, ...
i. To modify or otherwise change any term of all or any part of the Liabilities..., to grant any extension or renewal thereof ...
* * * *
v. In the event of the nonpayment when due, whether by acceleration or otherwise, of any of the Liabilities, or in the event of default ..., to realize on the collateral or any part thereof,... by foreclosure or otherwise, ... all as Lender in its uncontrolled discretion may deem proper....
* * * *
In case the Debtor shall fail to pay all of the Liabilities when due, whether by acceleration or otherwise, ... the undersigned, immediately upon the written demand of Lender, will pay Lender the amount due and unpaid by the Debtor....
* * * *
The failure of any other person to sign this guaranty shall not release or affect the liability of any signer hereof. (Emphasis supplied.)
On April 2, 1984, Western World assigned its interest in the mortgage and promissory note to Bursey, the husband of Western World's president. The assignment read, in pertinent part:
Western World Real Estate, Inc .... in consideration for the sum of [$205,000]... does hereby sell, assign, transfer, and set over, to said party of the second part, his heirs and assigns, that certain mortgage executed by Joli Hospitalities, Inc., as mortgagor to Western World Real Estate, Inc., as mortgagee ... together with all right and interest in the land therein described, and in the note and obligations therein specified, and as to the debt thereby secured....
In December, 1984, Joli I sold the Hotel to Joli Moorhead Limited Partnership ("Joli II"), a limited partnership which was formed by the March Company. Nevertheless, Joli I maintained the management contract to operate the Hotel.
In January, 1985, Greene sent a registered letter to Western World on behalf of Joli I, exercising the right to extend the final payment date under the promissory note to March 30, 1987.
In December, 1985, the March Company secured an injunction in a Minnesota federal court enjoining Greene and Joli I from participating in the management of the Hotel and Joli II. Thereafter, the March Company entered into an agreement on April 1, 1986, with Bursey to modify the promissory note. This agreement extended the final payment date under the note from March, 1987 to April, 1991. Joli II made its last sporadic payment under the new agreement on March 3, 1987. At some point thereafter, which is not clear *1114 from the record, the March Company dissolved.
On April 7, 1995, Bursey sued Greene and others in Palm Beach County, Florida[1], alleging that each of them was personally liable under the written guaranty for Joli II's having defaulted under the promissory note. Bursey alleged he was the present owner and holder of the note, agreement, and guaranty based on his having received same by assignment from Western World on April 2, 1984. Greene raised the affirmative defenses of statute of limitations and laches, among others.
In April, 1998, the court granted Bursey's motion for final summary judgment, awarding Bursey the outstanding principal of $195,000 plus interest, costs, and attorney's fees, for a total sum of $474,809.55. This appeal followed.

Bursey's Right to Enforce the Personal Guaranty
Greene argues that the court erred in granting Bursey summary judgment because fact issues remained as to whether Bursey had any legal right to enforce the personal guaranty against him. We disagree. Western World's assignment of the note and mortgage to Bursey operated as an assignment of the guaranty, even though the assignment contained no specific reference to the guaranty. See 38 Am.Jur.2d Guaranty § 36 (1968)(stating that a guaranty of payment of a bill or note passes with a transfer of the bill or note, whether such guaranty is indorsed on the bill or note or is contained in a separate instrument). As the subject guarantee was premised on the original note and mortgage, and ran unconditionally to Western World, its successors, and assigns, it was a general guaranty. See Rizzi v. Service Dev. Corp., 354 So.2d 898, 899 (Fla. 4th DCA 1978)(holding a guaranty which was for the benefit of the lessor and "his heirs and assigns" was a general guaranty). Because anyone who acts on a general guaranty may enforce it, New Holland, Inc. v. Trunk, 579 So.2d 215, 217 (Fla. 5th DCA 1991) (citation omitted), Bursey, as Western World's assignee of the note and mortgage, was entitled to enforce same against Greene.

Whether Bursey's Claim is Barred By the Statute of Limitations
Greene next argues that a fact question remained as to whether Bursey's claim was barred by the statute of limitations. He maintains that Bursey's cause of action accrued, if at all, in 1987, when Joli II defaulted under the terms of the note, and not in 1991, the final maturity date of the note, as Bursey maintains. It is undisputed that the applicable statute of limitations is section 95.11(2)(b), Florida Statutes (1997), which sets a five-year period for suits involving an action on a contract, obligation, or liability founded on a written instrument, as here. The statute of limitations begins to run from the time the cause of action accrues. § 95.031, Fla. Stat. (1997); Bauld v. J.A. Jones Constr. Co., 357 So.2d 401 (Fla.1978). A cause of action accrues when the last element constituting the cause of action occurs. § 95.031(1), Fla. Stat. (1997). Thus, the key to resolving this point on appeal is to determine whether Bursey filed his lawsuit within five years from the date his cause of action accrued.
The note which Greene guaranteed provided for monthly installment payments though April 1, 1991. Ordinarily, the statute of limitations under an installment contract starts to run on the date each payment becomes due. Isaacs v. Deutsch, 80 So.2d 657, 660 (Fla.1955). As such, the statute of limitations may run on some installments and not others. Central Home Trust Co. of Elizabeth v. Lippincott, 392 So.2d 931, 933 (Fla. 5th DCA 1980)(footnote omitted). Where the installment contract contains an optional acceleration clause, the statute of limitations *1115 may commence running earlier on payments not yet due if the holder exercises his right to accelerate the total debt because of a default. Id. (footnote omitted). In other words, the entire debt does not become due on the mere default of payment; rather, it become due when the creditor takes affirmative action to alert the debtor that he has exercised his option to accelerate. United States v. Cardinal, 452 F.Supp. 542, 547 (D.Vt.1978) (citation omitted). This is true even when the note itself, as here, waives notice of demand. Id.
It is undisputed that Bursey never accelerated the note even though, under the terms of the guaranty, he had the option of doing so upon Joli II's default in any given month. Thus, the statute of limitations on the underlying note would not have commenced until it matured on April 1, 1991. Cf. Monte v. Tipton, 612 So.2d 714 (Fla. 2d DCA 1993)(holding cause of action accrued on date that mortgagee exercised optional acceleration clause).
However, the statute of limitations on the guaranty did not necessarily commence at that same time. Specifically, the guaranty has, as a condition precedent, a "demand" requirement. As a general rule of contract law, where the contract requires a demand as a condition to the right to sue, the statute of limitations does not commence until such a demand is made. United States v. First City Capital Corp., 53 F.3d 112, 115 (5th Cir.1995). Where the plaintiff's cause of action depends on an act that he himself must perform, as here, he may not suspend indefinitely the running of the statute of limitations by delaying performance of this act. United States v. Gordon, 78 F.3d 781, 785 (2d Cir.1996)(citing 18 Samuel Williston, Law of Contracts, 21 2021A, at 697). In other words, the plaintiff may not, by failing or refusing to perform the condition, toll the running of the statute and reserve the right to sue within the statutory period from such time as he decides to make a demand. First City Capital 53 F.3d at 115.
Because the terms of the guaranty and not the note govern Greene's liability, see id., Bursey could not have unreasonably delayed demanding payment on the guaranty once Joli II defaulted on the note in 1991. The question then becomes whether Bursey ever made any such demand on Greene. In this regard, the record does not reflect whether any formal demand was made prior to Bursey's filing suit. As such, we hold that a material question of fact remained as to whether Bursey made such demand within a reasonable time.[2]
In this vein, we do not believe that the filing of the suit in this case satisfied the demand requirement. As a practical matter, the purpose of such a demand is to afford the guarantor the opportunity to pay the sums due the creditor to avoid a potential lawsuit and, thus, additional costs and fees. The parties have not provided any case law which would support that the filing of the suit substitutes for the demand.
Bursey nevertheless points to provisions in the guaranty in which Greene waived his right to notice and demand. He implicitly argues that, pursuant to these provisions, he did not need to give any prior demand or notice to Greene before suing him. The Ninth Circuit rejected this same argument in United States v. Gottlieb, 948 F.2d 1128 (9th Cir.1991). *1116 That case involved a suit on a guaranty on a promissory note that had almost identical language as here.[3] The court held that the same waiver provisions that exist in Greene's guaranty pertained to the relationship between the creditor and the original debtor, and not to the direct enforcement of the guaranty. Accordingly, it held that same did not conflict with the express provisions in the guaranty that the guarantor would become liable for repayment of the loan only upon written demand. Id. Although we recognize that Gottlieb is not binding on this court as precedent, we find it persuasive and, on this basis, reverse summary judgment.

Whether Bursey's Claim is Barred By the Doctrine of Laches
We alternatively reverse on the basis that a fact question remained with respect to whether the doctrine of laches barred Bursey's claim.[4] Even though the guaranty gave Bursey "uncontrolled discretion" to not accelerate the note, a factual issue still remains as to whether Bursey's waiting until 1995 to sue Greene was reasonable. Although Bursey argued to the court that he could not sue earlier because of problems he encountered in locating and serving Greene, we hold that such argument presented a factual determination inappropriate for summary judgment.
AFFIRMED in part; REVERSED in part and REMANDED for further proceedings in accordance with this opinion.
DELL and STEVENSON, JJ., concur.
NOTES
[1] This action was brought in Florida because Greene was then residing in Palm Beach County. There is no issue on appeal concerning the propriety of venue.
[2] If Bursey made some demand before filing suit there would be no statute of limitations problem, since suit would have been filed within five years of the date of the note's maturity. See 38 Am.Jur.2d Guaranty § 121 (1968)(stating, generally, that in the case of a guaranty of a promissory note, the statute of limitations runs at the time the underlying instrument matures); First City Capital, 53 F.3d at 115. We decline to address what the result would be if such demand was made after Bursey filed suit, or if it were not made at all, since the parties have not raised this possibility in their briefs.
[3] The subject guaranty provided,

[T]he Undersigned hereby unconditionally guarantees to Lender, its successors and assigns, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, of the principal of and interest on and all other sums payable, or stated to be payable, with respect to the note of the Debtor....
In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the Undersigned, immediately upon the written demand of Lender, will pay to Lender the amount due and unpaid by the Debtor.
Id. at 1129. It also provided,
The Undersigned waives any notice of the incurring by the Debtor at any time of the Liabilities, and waives any and all presentment, demand, protest or notice of dishonor, nonpayment, or other default with respect to any of the Liabilities and any obligation of any party at any time comprised in the collateral. The Undersigned hereby grants Lender ... the following powers:
* * * *
(e) In the event of the nonpayment when due, whether by acceleration or otherwise, of any of the Liabilities, or in the event of default in the performance of any obligation comprised in the collateral, to realize on the collateral ... without demand ... by foreclosure or otherwise ... all as Lender in its uncontrolled discretion may deem necessary.
Id. at n. 2.
[4] The defendant who seeks to assert this doctrine must prove (1) conduct on the part of the defendant giving rise to the situation of which complaint is made; (2) failure of the plaintiff, having had knowledge or notice of the defendant's conduct, to assert his rights by suit; (3) lack of knowledge on the part of the defendant that plaintiff will assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in event relief is accorded to the plaintiff. Van Meter v. Kelsey, 91 So.2d 327, 330-31 (Fla.1956).