# Third District Court of Appeal

## State of Florida

Opinion filed January 14, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-1547
Lower Tribunal No. 13-8196
_____


**Richard Hubert Snow, et al.,**
Appellants,

vs.

**Wells Fargo Bank, N.A., etc.,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Marvin H. Gillman, Judge.

John H. Ruiz and Karen J. Barnet-Backer and Christine M. Lugo, for appellants.

Burr & Forman and John R. Chiles and Christine Irwin Parrish and Gennifer L. Bridges (Orlando), for appellee.


Before SALTER, EMAS and SCALES, JJ.

EMAS, J.

Richard and Nancy Snow ("the Snows") appeal a final judgment of foreclosure entered in favor of Wells Fargo Bank, N.A. ("Wells Fargo"). We affirm.

**FACTS**

The Snows executed a note and mortgage on real property in Miami, Florida on May 25, 2007. Pursuant to the terms of the mortgage, the lender had the option to accelerate the debt in the event of a default by the borrower:

> 22. Acceleration; Remedies. <u>Lender shall give notice to Borrower prior to acceleration following Borrower's breach</u> of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise.) The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) <u>that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums</u> secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. <u>If the default is not cured on or before the date specified in the notice, Lender at is option may require immediate payment in full of all sums</u> secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

2

The Snows failed to make the required monthly payment due on October 1, 2007. On December 6, 2007, Wells Fargo sent the Snows a notice of default, which provided in pertinent part:

> You are hereby provided formal notice by the Servicer (EMC Mortgage Corporation), as authorized by the Creditor of the above-referenced home loan (hereinafter referred to as "the Debt") <u>that you are in default under the terms and conditions of the Note and Security Instrument</u> (i.e. Deed of Trust, Mortgage, etc.) for failure to pay the required installments when due, and important data regarding that information is found in this document.
>
> <u>This letter serves as further notice that EMC Mortgage Corporation intends to enforce the provisions of the Note and Security Instrument. You must pay the full amount of the default on this loan by the thirty-fifth (35th) day from the date of this letter which is 01/10/2008 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). If you do not pay the full amount of the default, we shall accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property.</u> . . .
>
> You are hereby informed that you have the right to "cure" or reinstate the loan after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and sale.
>
> <u>As of 12/05/2007 the amount of the debt that we are seeking to collect is $6,872.72,</u> which includes the sum of payments that have come due on or after the date of default. . . .

Thereafter, Wells Fargo filed a foreclosure action against the Snows on March 12, 2008, alleging, inter alia:

> There has been a default under the note and mortgage held by Plaintiff in that the payment due October 1, 2007 and all subsequent payments have not been made. Plaintiff declares the full amount due under the note and mortgage to be now due.
>
> All conditions precedent to the filing of this action have been performed or have occurred.

On June 28, 2011, Wells Fargo voluntarily dismissed, without prejudice, the foreclosure action against the Snows. Thereafter, on March 5, 2013, Wells Fargo filed a second foreclosure action against the Snows. The Snows answered this complaint and alleged as an affirmative defense that the expiration of the five-year statute of limitations barred the second foreclosure action.

At trial, the Snows argued that the second foreclosure action was barred by the statute of limitations because the limitations period began to run on January 10, 2008 (the date by which the Snows were required, pursuant to the notice of default letter, to cure the default) and expired five years later (on January 10, 2013), three months prior to the filing date of the second foreclosure action. In other words, the Snows argued, because they failed to cure the default within the time period set forth in the default letter, the debt was automatically accelerated on January 10, 2008.

Wells Fargo contended that the date of acceleration was not January 10, 2008, but rather March 12, 2008, the date the complaint was filed in the first foreclosure action. Therefore, Wells Fargo argued, the five-year limitations period[1] had not yet expired when Wells Fargo filed the second lawsuit on March 5, 2013. The December 7, 2007 letter, it argued, was a notice of default and a notice that Wells Fargo would take future action, including but not limited to acceleration of the debt and the filing of a foreclosure action, if the default was not cured.

The trial court determined that the debt was accelerated on the date Wells Fargo filed the lawsuit on March 12, 2008; that the statute of limitations commenced on that date; and that the second foreclosure action (filed on March 5, 2013) was accomplished prior to the expiration of the five-year limitations period. Final judgment of foreclosure was entered thereafter, and this appeal followed. We review this statute of limitations issue *de novo*. Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP, 137 So. 3d 1081 (Fla. 3d DCA 2014).

**DISCUSSION**

When an acceleration clause is absolute, the entire indebtedness becomes due immediately upon default. Such an acceleration is self-executing, requiring neither notice of default nor some further action to accelerate the debt. Baader v. Walker, 153 So. 2d 51 (Fla. 2d DCA 1963). By contrast, where the acceleration

---

[1] The relevant statute of limitations is provided in section 95.11(2)(c), Florida Statutes (2008).

5

clause is optional (as it is in this case), it is not automatic or self-executing, but requires the lender to exercise this option and to give notice to the borrower that it has done so. See Campbell v. Werner, 232 So. 2d 252, 254 n. 1 (Fla. 3d DCA 1970) (noting that the filing of a suit for foreclosure amounted to the exercise of the option to accelerate and operated as notice to the mortgagor of such election); Rones v. Charlisa, Inc., 948 So. 2d 878, 879 (Fla. 4th DCA 2007) (quoting Central Home Trust Co. of Elizabeth v. Lippincott, 392 So. 2d 931, 933 (Fla. 5th DCA 1980)) (holding acceleration option was exercised by filing of foreclosure complaint and noting that "to constitute an acceleration after default, where the holder has the option to accelerate, the holder or payee of the note must take some clear and unequivocal action indicating its intent to accelerate all payments under the note, and such action should apprise the maker of the fact that the option to accelerate has been exercised."); Greene v. Bursey, 733 So. 2d 1111, 1115 (Fla. 4th DCA 1999) (noting that in an installment contract with an optional acceleration clause, "the entire debt does not become due on the mere default of payment; rather, it become[s] due when the creditor takes affirmative action to alert the debtor that he has exercised his option to accelerate").

The statute of limitations on a mortgage foreclosure action does not commence until a default in payment of the final installment, unless the mortgage contains an acceleration clause. Locke v. State Farm Fire and Cas. Co., 509 So. 2d

6

1375 (Fla. 1st DCA 1987); <u>Conner v. Coggins</u>, 349 So. 2d 780 (Fla. 1st DCA 1977).

When the borrower defaults on a payment under a note containing an optional acceleration clause, the lender can exercise its option to accelerate all future payments, making the entire debt immediately due and payable. A cause of action on an accelerated debt accrues, and the statute of limitation commences, when the lender exercises the acceleration option and notifies the borrower of this exercise. See <u>Greene</u>, 733 So. 2d at 1115; <u>Monte v. Tipton</u>, 612 So. 2d 714 (Fla. 2d DCA 1993)(holding that, in a mortgage containing an optional acceleration clause, the cause of action for foreclosure did not accrue, and the statute of limitations did not begin to run, until the lender exercised her option to accelerate and demanded the total balance of principal and interest).

We hold that the December 7, 2007 letter did not constitute an acceleration of the debt nor did it "apprise the maker of the fact that the option to accelerate <u>has been exercised</u>." <u>Central Home Trust</u>, 392 So. 2d at 933 (emphasis supplied). Rather, the December 7th letter served as a notice of default, notice of the Snows right to cure, and notice that Wells Fargo intended, at some unspecified future date, to accelerate the debt if the Snows failed to cure the default as set forth in the letter. The pertinent language of the December 7th letter provided:

> This letter serves as further notice that EMC Mortgage
> Corporation intends to enforce the provisions of the Note

and Security Instrument. You must pay the full amount of the default on this loan by the thirty-fifth (35th) day from the date of this letter which is 01/10/2008 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). <u>If you do not pay the full amount of the default, we shall accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property</u>. . . .

(Emphasis supplied.)

Absent from the letter is any declaration by Wells Fargo that the full amount of principal and interest is immediately due, or any demand for payment of the full amount of principal and interest. That is because, under the terms of the mortgage, a tender by the Snows of the default amount would cure the default and prevent Wells Fargo from accelerating the debt. <u>Yelen v. Bankers Trust Co.</u>, 476 So. 2d 767 (Fla. 3d DCA 1985). The payment demanded by the letter was merely the specific amount necessary to bring the loan current:

As of 12/05/2007 the amount of the debt that we are seeking to collect is $6,872.72, which includes the sum of payments that have come due on or after the date of default. . . .

The Snows' argument focuses on one portion of the letter which reads: "If you do not pay the full amount of the default, <u>we shall accelerate</u> the entire sum of both principal and interest due and payable. . . ." (Emphasis added.) We reject the Snows' contention that the phrase "we shall accelerate" somehow converted the

8

optional acceleration into a prospective, self-executing acceleration which was automatically triggered upon the failure of the Snows to cure the default. The December 7th letter did not indicate that Wells Fargo <u>was exercising</u> its option to accelerate, but only that Wells Fargo <u>intended</u> to exercise its option to accelerate in the future, should the Snows fail to cure the default. Therefore, the lapse of the 35-day grace period (without a cure of the default) did not automatically accelerate the debt or trigger the commencement of the five-year statute of limitations. Instead, the limitations period commenced when Wells Fargo filed the March 12, 2008 foreclosure complaint, expressing in clear and unequivocal language that it was exercising its option and accelerating the debt:

> There has been a default under the note and mortgage held by Plaintiff in that the payment due October 1, 2007 and all subsequent payments have not been made. <u>Plaintiff declares the full amount due under the note and mortgage to be now due.</u>

(Emphasis supplied.)

Thus, the statute of limitations would have expired March 12, 2013, and because the second foreclosure action was filed March 5, 2013, it was not time-barred.[2]

Affirmed.

---

[2] We find no merit in the other issues raised in this appeal. <u>See</u> <u>Deutsche Bank Trust Co. Am. v. Beauvais</u>, No. 3D14-575 (Fla. 3d DCA Dec. 17, 2014).