# Third District Court of Appeal

## State of Florida

Opinion filed December 17, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-575
Lower Tribunal No. 12-49315
_____

**Deutsche Bank Trust Company Americas, etc.,**
Appellant,

vs.

**Harry Beauvais, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Peter R. Lopez, Judge.

K & L Gates LLP, William P. McCaughan, Steven R. Weinstein and Stephanie N. Moot, for appellant.

Sigfried, Rivera, Hyman, De La Torre, Mass & Sobel, Steven M. Siegfried and Nicholas Sigfried; The Wallen Law Firm and Todd L. Wallen, for appellees.

Before SHEPHERD, C.J., and EMAS and SCALES, JJ.

EMAS, J.

## I.    INTRODUCTION

Deutsche Bank Trust Company Americas, as Indenture Trustee for American Home Mortgage Investment Trust 2006-2 ("Deutsche Bank"), appeals from the trial court's order of final summary judgment in favor of Aqua Master Association, Inc. ("the Association").  Deutsche Bank asserts the trial court erred in concluding that the expiration of the statute of limitations barred the cause of action and rendered the lien of mortgage on the property null and void.  The following issue is squarely raised in this case:

> Where a lender files a foreclosure action upon a borrower's default, and expressly exercises its contractual right to accelerate all payments, does an involuntary dismissal of that action without prejudice in and of itself negate, invalidate or otherwise "decelerate" the lender's acceleration of the payments, thereby permitting a new cause of action to be filed based upon a new and subsequent default?

We answer that question in the negative, and hold that the involuntary dismissal without prejudice of the foreclosure action did not by itself negate, invalidate or otherwise decelerate the lender's acceleration of the debt in the initial action.  The lender's acceleration of the debt triggered the commencement of the statute of limitations, and because the installment nature of the loan payments was never reinstated following the acceleration, there were no "new" payments due and thus there could be no "new" default following the dismissal without prejudice of the initial action.  The filing of the subsequent action, after expiration of the statute

2

of limitations, was therefore barred.  We reverse, however, that portion of the order which canceled the note and mortgage and quieted title in favor of the Association.

## II.   BACKGROUND AND FACTS

The mortgage at issue ("the Mortgage") encumbered a condominium on Aqua Avenue in Miami Beach ("the Property"), which is currently owned by the Association.  Harry Beauvais, the mortgagor and original borrower, lost title to the Property as a result of an unrelated foreclosure proceeding initiated by the Association, as will be described below. The Association has owned the property since February 22, 2011.

The note and mortgage were executed on February 10, 2006 in the principal amount of $1,440,000.  Beauvais defaulted on his payments to the original mortgagee in September 2006.  There are three actions regarding the Property that provide context for this appeal:

- *American Home Mortgage Servicing, Inc. ("AHMS") v. Beauvais, et al.* ("the Initial Action"):  This Initial Action was commenced on January 23, 2007, after Beauvais defaulted on his payments in September 2006.  AHMS sought to foreclose on the mortgage on the full amount of the debt.  In paragraph four of its complaint, AHMS alleged: "Defendant, Harry Beauvais, failed to pay the payment due on the Note on September 1, 2006, and Plaintiff elected to accelerate payment of the balance."  (Emphasis added.) In its complaint, AHMS sought payment of the full, accelerated amount of the remaining principal due-- $1,439,926.80.  On December 6,

3

2010, the trial court dismissed the Initial Action without prejudice because AHMS failed to appear at a case management conference. AHMS did not appeal this dismissal order, and took no further action with regard to its acceleration of the payments.

- *Aqua Master Association, Inc. v. Beauvais, et al* ("the Condominium Action"): In the Condominium Action, Association foreclosed its lien on the Property based on Beauvais' failure to pay condominium assessments. The Association obtained title to the Property in 2011, by issuance of a certificate of title, and obtained title subject to the AHMS mortgage.

- *Deutsche Bank Trust Company Americas v. Beauvais, et al.* ("the Current Action"): The Current Action was filed on December 18, 2012, in which Deutsche Bank[1] sought to foreclosure on the Property due to a default by Beauvais. In its complaint, Deutsche Bank alleges that Beauvais defaulted by failing to make the payment due October 1, 2006[2] as well as all subsequent payments. Similar to the complaint in the Initial Action, Deutsche Bank's complaint in the Current Action declared that it was exercising its contractual right to accelerate all payments, and alleged the full amount of the principal payable under the note and mortgage to be immediately due, in the amount of $1,439,926.80, the same principal amount sought in the complaint filed in the Initial Action. The Association

---

[1] Prior to the filing of the Current Action, the mortgage was assigned by AHMS to Deutsche Bank. For ease of reference, all references hereafter will be to Deutsche Bank, including actions and events involving its predecessor in interest, AHMS.
[2] The alleged default date in the Initial Action was September 1, 2006 payment.

4

answered, raising as an affirmative defense the expiration of the statute of limitations.

The Association moved for summary judgment in the Current Action, arguing that:

► In the Initial Action, Deutsche Bank exercised its contractual right to accelerate the payments, which triggered the running of the five-year statute of limitations for the entire debt;

► The trial court's dismissal without prejudice of the Initial Action did not negate or otherwise invalidate the acceleration of the debt or otherwise reinstate the installment nature of the payments due;

► Deutsche Bank took no action to withdraw its acceleration of the debt or otherwise reinstate the installment nature of the payments due;

► The Current Action (filed December 18, 2012) was filed more than five years after the statute of limitations commenced with Deutsche Bank's acceleration of the debt in the Initial Action (filed January 23, 2007); and

► Therefore, Deutsche Bank is barred by the statute of limitations from pursuing the Current Action.

Deutsche Bank responded, contending that:

► The Initial Action was based on a default date (September 1, 2006) different from the Current Action (October 1, 2006);

5

► The trial court's dismissal of the Initial Action served to "decelerate" the payments, in effect negating the acceleration exercised by Deutsche Bank in the Initial Action and reinstating the installment nature of the loan repayment; and

► Pursuant to <u>Singleton v. Greymar Assocs.</u>, 882 So. 2d 1004 (Fla. 2004), and its progeny, the statute of limitations did not bar the Current Action, because the failure to make a subsequent payment following dismissal of the Initial Action constituted a new default, creating a new and distinct cause of action and the commencement of a new statute of limitations period.

The trial court granted the Association's motion, and entered judgment in its favor, determining that: (i) the Current Action was barred by the statute of limitations because it was filed on December 18, 2012, more than five years after the filing of the complaint in the Initial Action in January 2007; and (ii) the expiration of the statute of limitations rendered the mortgage null and void. In its order, the court quieted title to the Property in favor of the Association against the claims of Deutsche Bank. The trial court denied Deutsche Bank's motion for rehearing, and this appeal followed. We review these issues *de novo*. <u>S. Fla. Coastal Elec., Inc. v. Treasures on Bay II Condo Ass'n</u>, 89 So. 3d 264, 266 (Fla. 2d DCA 2012).

## III.   <u>ANALYSIS</u>

6

Deutsche Bank's primary argument in this appeal is that when the Initial Action was involuntarily dismissed without prejudice in December 2010, this dismissal effectively "decelerated" the loan (which had been expressly accelerated by the complaint in the Initial Action), thus returning Deutsche Bank and Beauvais to their original positions before the lawsuit was filed, meaning that the installment nature of the loan repayment was again in effect. Therefore, Deutsche Bank's argument goes, Beauvais' failure to make a payment on October 1, 2006 (one month after the default date in the Initial Action) constituted a "new" default, creating a new and distinct cause of action with a new limitations period, allowing Deutsche Bank to foreclose (and to again exercise its contractual right to accelerate the loan payments), by filing the Current Action in December 2012.

The Association contends that Deutsche Bank's exercise of its contractual right to accelerate the debt in the Initial Action triggered the commencement of the five-year statute of limitations, and neither Deutsche Bank nor Beauvais took any action to reinstate the installment nature of the payments under the mortgage. The Association posits that the trial court's involuntary dismissal without prejudice could not, by operation of law, serve to "decelerate" the loan, to negate the acceleration of the payments, or to otherwise reinstate the installment nature of the payments, because such a conclusion would in effect permit the trial court to rewrite the terms of the contract between the lender and the borrower. Therefore,

7

the statute of limitations continued to run on the accelerated debt, and expired before Deutsche Bank filed the Current Action in December 2012.

## A.  The Statute of Limitations and a Contractual Acceleration Clause

Under the relevant statute of limitations, section 95.11(2)(c), Florida Statutes,  "[a]n action to foreclose a mortgage" "shall be commenced. . . within five years."  The statute of limitations begins to run when a cause of action accrues, and "[a] cause of action accrues when the last element constituting the cause of action occurs." City of Riviera Beach v. Reed, 987 So. 2d 168, 170 (Fla. 4th DCA 2008).  An acceleration clause contained in a note which by its terms requires payment in installments "confers a contract right upon the mortgagee which he may elect to enforce, upon a default."  Campbell v. Werner, 232 So. 2d 252, 255 (Fla. 3d DCA 1970).

> In Campbell, this court further noted that
>
> a contract for acceleration of a mortgage indebtedness should not be abrogated or impaired, or the remedy applicable thereto denied, except upon defensive pleading and proof of facts or circumstances which are regarded in law as sufficient grounds to prompt or support such action by the court.

Id. at 256.

When a mortgage contains an optional acceleration clause, the statute of limitations commences when the lender exercises this option and invokes the acceleration clause.  See Greene v. Bursey, 733 So. 2d 1111, 1115 (Fla. 4th DCA

8

1999) (noting that in an installment contract with an optional acceleration clause, "the entire debt does not become due on the mere default of payment; rather, it become[s] due when the creditor takes affirmative action to alert the debtor that he has exercised his option to accelerate."); Monte v. Tipton, 612 So. 2d 714 (Fla. 2d DCA 1993); Smith v. F.D.I.C., 61 F.3d 1552, 1561 (11th Cir. 1995)(holding, "when the promissory note secured by a mortgage contains an optional acceleration clause, the foreclosure cause of action accrues, and the statute of limitations begins to run, on the date the acceleration clause is invoked.").

The parties agree that the statute of limitations commenced, at the latest, when the Initial Action was filed on January 23, 2007, in a complaint which by its terms exercised the option to accelerate all payments due under the mortgage, rendering those payments (and the entire principal balance) immediately due and payable.

The relevant portion of the note provides:

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
. . .
**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on

9

that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

The relevant portion of the mortgage provides:

**22. Acceleration; Remedies.** Lender shall give notice[3] to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, but which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding and sale of the Property. <u>The notice shall further inform Borrower of the right to reinstate after acceleration</u> and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.

(Emphasis added.)

In this case, Deutsche Bank exercised its right of acceleration, and did "require immediate payment in full of all sums secured by this Security Instrument without further demand" and did seek to "foreclose this Security Instrument by judicial proceeding." Neither the note nor the mortgage provides that dismissal ~~without prejudice of the~~ foreclosure action would negate the acceleration of the

[3] Although the record does not include the notice of default sent to Beauvais before institution of the Initial Action in January 2007, no issue has been raised on appeal regarding the timing, adequacy or propriety of the notice of default prior to acceleration.

debt or otherwise reinstate the installment nature of the loan.  Indeed, the mortgage provides only that the notice of default shall "inform Borrower of the right to reinstate after acceleration. . . ."  The only other provision regarding reinstatement after acceleration is also framed in terms of the rights of the Borrower:

> **18. Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, <u>Borrower shall have the right to have enforcement of this Security Instrument discontinued</u> at any time prior to the earliest of: (a) five days before the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  <u>These conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged</u>. . . .  <u>Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.</u>

(Emphasis added.)

There is no evidence that Beauvais sought to have the acceleration of the debt (or other enforcement of the mortgage) discontinued or modified, nor is there

11

any evidence that he sought reinstatement of the installment nature of the payments or met any of the conditions necessary for reinstatement.

And so what remains in dispute is whether the involuntary dismissal without prejudice of the Initial Action had any legal effect on the acceleration of the debt: in other words, did the involuntary dismissal without prejudice of the Initial Action reinstate the installment terms of the mortgage and note (i.e., effectuate a "deceleration" of the acceleration option exercised by Deutsche Bank in its complaint) such that a failure to make a subsequent payment could be considered a "new" default, causing the accrual of a new cause of action and commencing the running of a new statute of limitations period?

### B. *Singleton* **and its Progeny**

In support of its position Deutsche Bank relies heavily on <u>Singleton v. Greymar Associates</u>, 882 So. 2d 1004 (Fla. 2004), and several cases applying <u>Singleton</u>. In <u>Singleton</u>, the lender brought a foreclosure action based on borrowers' failure to make payments from September 1, 1999 to February 1, 2000. <u>Id.</u> at 1005. This first action was dismissed *with prejudice* when the lender failed to appear at a case management conference. <u>Id.</u> Thereafter, a second foreclosure action was filed, alleging borrowers failed to make payments from April 1, 2000 onward. <u>Id.</u> The trial court eventually entered final judgment for the lender, against borrowers' contention that res judicata barred relief in the second action,

which borrowers contended was identical to the first action.  Id.  On appeal, the Fourth District affirmed the trial court, finding that "[e]ven though an earlier foreclosure action filed by [lender] was dismissed with prejudice, the application of res judicata does not bar this lawsuit. . . .  The second action involved a new and different breach."  Id.

The Florida Supreme Court accepted jurisdiction upon express and direct conflict with the Second District's decision in Stadler v. Cherry Hill Developers, Inc., 150 So. 2d 468 (Fla. 2d DCA 1963).  In Stadler, an initial foreclosure action was filed, alleging a default date of May 1960.  Id. at 469.  That action was later dismissed by the trial court *with prejudice* for failure to comply with a rule of court.  Id.  A second foreclosure action was thereafter filed, alleging a subsequent default date of August 1960.  Id.  The trial court entered a final judgment of foreclosure, and the Second District reversed, holding that res judicata barred the second action.  Id.

The supreme court disapproved of the holding in Stadler and approved the Fourth District's holding in Singleton:

> We agree with the reasoning of the Fourth District that when a second and separate action for foreclosure is sought for a default that involves a separate period of default from the one alleged in the first action, the case is not necessarily barred by res judicata.

Singleton, 882 So. 2d at 1006-07.

13

> We conclude that the doctrine of res judicata does not necessarily bar successive foreclosure suits, regardless of whether or not the mortgagee sought to accelerate payments on the note in the first suit. In this case the subsequent and separate alleged default created a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action.

Id. at 1008.

Deutsche Bank argues that the Singleton analysis is equally applicable to a claim of a statute of limitations bar, as opposed to a claim of res judicata. The Association argues that Singleton was decided strictly on res judicata principles and its rationale does not extend to a case involving application of the statute of limitations. We conclude that both arguments miss the dispositive distinction between Singleton and the instant case: Singleton involved an involuntary dismissal *with prejudice* of the initial action, whereas the instant case involved an involuntary dismissal *without prejudice*. The dismissal with prejudice in Singleton operated as an adjudication on the merits. By contrast, the trial court's dismissal in the instant case was expressly entered without prejudice, which did not operate as an adjudication on the merits. See Fla. R. Civ. P. 1.420(b) ('[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision. . . operates as an adjudication on the merits")(emphasis added); CPI Mfg. Co. v. Industrias St. Jack's, S.A. De C.V., 870 So. 2d 89 (Fla. 3d DCA 2003); National

Carloading Corp. v. Gemini Transp., Inc., 364 So. 2d 504 (Fla. 3d DCA 1978); Milsaps v. Orlando Wrecker, Inc., 634 So. 2d 680 (Fla. 5th DCA 1994).

In Singleton, the dismissal with prejudice disposed not only of every issue actually adjudicated, but every justiciable issue as well. Hinchee v. Fisher, 93 So. 2d 351, 353 (Fla. 1957), overruled in part on other grounds, May v. State ex rel. Ervin, 96 So. 2d 126 (Fla. 1957). In Hinchee, as in Singleton and Stadler, the trial court dismissed an initial action with prejudice. Hinchee, 93 So. 2d at 353. This operated as an adjudication on the merits and, as a general proposition for purposes of res judicata, "puts at rest and entombs in eternal quiescence every justiciable, as well as every actually adjudicated, issue." Id. (quoting Gordon v. Gordon, 59 So. 2d 40, 43 (Fla. 1952)). As the Court observed in Hinchee:

> A judgment on the merits does not require a determination of the controversy after a trial or hearing on controverted facts. It is sufficient if the record shows that the parties might have had their controversies determined according to their respective rights if they had presented all their evidence and the court applied the law.

Id. (quoting Olsen v. Muskegon Piston Ring Co., 117 F.2d 163, 165 (6th Cir. 1941)).

Thus, in Singleton (and Stadler), the order of dismissal with prejudice served to adjudicate, in favor of the borrower, the merits of the lender's claim and the borrower's defenses, thus determining there was no valid default (and, by extension, no valid or effective acceleration of the debt). It is this merits

15

determination that the Supreme Court addressed in <u>Singleton</u>, and is the issue which renders the <u>Singleton</u> analysis inapplicable to the instant case:

> While it is true that a foreclosure action and an acceleration of the balance due based upon the same default may bar a subsequent action on that default, an acceleration and foreclosure predicated upon subsequent and different defaults present a separate and distinct issue. <u>See</u> <u>Olympia Mortgage Corp. [v. Pugh]</u>, 774 So.2d [863] at 866 (Fla. 4th DCA 2000) ("We disagree that the election to accelerate placed future installments at issue."); <u>see also</u> <u>Greene v. Boyette</u>, 587 So.2d 629, 630 (Fla. 1st DCA 1991) (holding that a mortgagee can successfully recover twice on one mortgage for multiple periods of default because the payments were different "installments"). <u>For example, a mortgagor may prevail in a foreclosure action by demonstrating that she was not in default on the payments alleged to be in default, or that the mortgagee had waived reliance on the defaults. In those instances, the mortgagor and mortgagee are simply placed back in the same contractual relationship with the same continuing obligations. Hence, an *adjudication* denying acceleration and foreclosure under those circumstances should not bar a subsequent action a year later if the mortgagor ignores her obligations on the mortgage and a valid default can be proven.</u>

<u>Singleton</u>, 882 So. 2d at 1007 (emphasis added.)

Res judicata is not the issue in the instant case because the dismissal of the Initial Action was without prejudice, and therefore the borrower here (unlike the borrower in <u>Singleton</u>) did not "prevail in the foreclosure action by demonstrating that she was not in default" nor was there "an adjudication denying acceleration and foreclosure" such that the parties "are simply placed back in the same contractual relationship with the same continuing obligations." <u>Id.</u>  This is significant because, where, as here, there has been no adjudication on the merits,

nor a determination that the acceleration was invalid or ineffectual, the lender's exercise of its option to accelerate the debt survives a dismissal without prejudice.[4] And because the accelerated nature of the debt was unaffected by the order of dismissal without prejudice, and the parties never reinstated the installment terms of the repayment of the debt, it necessarily follows that the statute of limitations on the accelerated debt continued to run. Therefore, the only subsequent cause of action which Deutsche Bank could file under the circumstances was an action on the accelerated debt— it could not thereafter sue upon an alleged "new" default because, without reinstating the installment terms of the repayment of the debt, there were no "new" payments due, only the single accelerated payment that was

---

[4] Deutsche Bank's act of acceleration was set forth in the body of the complaint filed in the Initial Action:

> Defendant, Harry Beauvais, failed to pay the payment due on the Note on September 1, 2006, and Plaintiff elected to accelerate payment of the balance.

The inclusion of this language in the complaint carried independent legal significance beyond that of a mere factual allegation. It constituted the exercise of the optional acceleration clause, and served under the facts of this case as the last act necessary to the accrual of a cause of action (and the commencement of the statute of limitations), converting what was an installment loan into a single payment of all principal due and owing immediately. See Campbell, 232 So. 2d at 256 n.1 and cases cited therein (noting "the filing of suit for foreclosure amounts to exercise of the option of the mortgagee to declare the whole of the principal sum and interest secured by the mortgage due and payable"). See also Liles v. Savage, 163 So. 399 (Fla. 1935); Locke v. State Farm Fire and Cas. Co., 509 So. 2d 1375 (Fla. 1st DCA 1987).

due at the time of the Initial Action, which continued to remain due after the dismissal without prejudice. Without a new payment due, there could be no new default, and therefore no new cause of action. Because the Current Action was based upon the very same accelerated debt as the Initial Action, and because that Current Action was filed after the expiration of the five-year statute of limitations, it was barred.[5]

---

[5] The <u>Singleton</u> Court cited to <u>Olympia Mortg. Corp. v. Pugh</u>, 774 So. 2d 863 (Fla. 4th DCA 2000), in which the Fourth District held that "[b]y voluntarily dismissing the suit, Olympia in effect decided not to accelerate payment on the note and mortgage at that time." <u>Id.</u> at 866. In so holding, however, the Fourth District equated this voluntary dismissal with an adjudication on the merits:

> [I]f we treat Olympia's voluntary dismissal of the first foreclosure action as an adjudication on the merits against Olympia, then the payment on the note and mortgage could not have been accelerated. Although Olympia sought to accelerate, had Olympia gone through with the suit and lost on the merits, then the court would have necessarily found that the Pughs had not defaulted on the payments due to date. If the Pughs had not defaulted, then Olympia would not be entitled to accelerate payment on the note and mortgage. <u>Id.</u> (emphasis added).

The Fourth District did not offer a rationale for its conclusion that a plaintiff's first voluntary dismissal should be treated as an adjudication on the merits, since such a voluntary dismissal is ordinarily without prejudice and does not constitute an adjudication on the merits, absent a prior dismissal of the same claim by plaintiff. <u>See</u> Fla. R. Civ. P. 1.420(a)(1) (providing that "[u]nless otherwise stated in the notice. . . a [notice of voluntary] dismissal is without prejudice, except that a notice of dismissal operates as an adjudication on the merits when served by a plaintiff who has once dismissed in any court an action based on or including the same claim."). To the extent that <u>Olympia</u> holds that a voluntary dismissal without prejudice of a foreclosure action on an accelerated debt is to be treated as an adjudication on the merits and an adjudication that the debt could not be

18

We acknowledge that <u>Singleton</u> has been applied to permit, as against an asserted statute of limitations bar, the filing of a subsequent action following dismissal *with prejudice* (i.e., an adjudication on the merits) of an earlier action. <u>See</u> <u>2010-3 SFR Venture, LLC. v. Garcia</u>, 149 So. 3d 123 (Fla. 4th DCA 2014); <u>Star Funding Solutions, LLC. V. Krondes</u>, 101 So. 3d 403 (Fla. 4th DCA 2012); ); <u>U.S. Bank Nat. Ass'n. v. Bartram</u>, 140 So. 3d 1007 (Fla. 5th DCA 2014) review granted, <u>Bartram v. U.S. Bank Nat. Ass'n</u>, Nos. SC14-1265, SC14-1266, SC14-1305 (Fla. Sept. 11, 2014); <u>PNC Bank, N.A., v. Neal</u>, 147 So. 3d 32 (Fla. 1st DCA 2013). We believe our holding is not necessarily inconsistent with the strict holdings of these cited cases, as each of them involved a dismissal of the earlier action with prejudice, representing an adjudication on the merits and, at least implicitly, a determination that there was no default and therefore no valid or effectual acceleration. For example, in <u>Bartram</u>, 140 So. 3d at 1014, the Fifth District held that the bank's acceleration of a note in its initial lawsuit (which was subsequently dismissed with prejudice pursuant to rule 1.420(b)) did not prevent a subsequent foreclosure action by the mortgagee (filed more than five years after the acceleration) based on payment defaults occurring subsequent to dismissal with prejudice of the first action. The <u>Bartram</u> court concluded that the res judicata ~~analysis of <u>Singleton</u> applies with equal force to a statute of limitations analysis~~ accelerated, we must respectfully disagree.

19

because, given the Supreme Court's "conclusion that each new default creates a new cause of action, the statute of limitations would only begin to run when the new cause of action accrued." Id. at 1012. The Bartram court further held:

> Based on Singleton, a default occurring after a failed foreclosure attempt creates a new cause of action for statute of limitations purposes, even where acceleration had been triggered and the first case was dismissed on its merits. Therefore, we conclude that a foreclosure action for default in payments occurring after the order of dismissal in the first foreclosure action is not barred by the statute of limitations found in section 95.11(2)(c), Florida Statutes, provided the subsequent foreclosure action on the subsequent defaults is brought within the limitations period [of the new default]. We therefore reverse the judgment under review and remand this case to the trial court for further proceedings consistent with this opinion.

Id. at 1014. The Fifth District certified the following question to the Florida Supreme Court:

> Does acceleration of payments due under a note and mortgage in a foreclosure action that was dismissed pursuant to rule 1.420(b), Florida Rules of Civil Procedure, trigger application of the statute of limitations to prevent a subsequent foreclosure action by the mortgagee based on all payment defaults occurring subsequent to dismissal of the first foreclosure suit?

Id.

A foundational element for the decision in Bartram was Singleton's observation "that each new default creates a new cause of action" and the accrual of a new cause of action commences a new statute of limitations period. Id. at 1012. In Bartram (as in Singleton), a new default (and therefore a new cause of

20

action) existed only because the dismissal of the first action was with prejudice, constituting an adjudication on the merits and a determination that there was no valid acceleration.  Here, by contrast, because the dismissal was without prejudice, there was no adjudication on the merits, and thus no determination regarding Deutsche Bank's acceleration of the debt in the Initial Action.  Without an adjudication on the merits, the acceleration of the debt remained in place, meaning that the entire balance of the debt was and remained immediately due.  Under those circumstances, there are no new payments due.  Without any new payment due there could be no new default, and without a new default there could be no new cause of action.

Although the dismissal without prejudice distinguishes the instant case from Singleton and Bartram (and other cases applying Singleton to dismissals with prejudice), we recognize that several courts have applied Singleton to hold that a subsequent foreclosure action was not barred by the statute of limitations following a dismissal *without prejudice* of the first foreclosure action.   See Evergrene Partners, Inc. v. Citibank, N.A., 143 So. 3d 954, 956 (Fla. 4th DCA 2014) (applying Singleton and Bartram and holding statute of limitations did not bar a subsequent foreclosure action following a voluntary dismissal without prejudice of prior foreclosure action); Dorta v. Wilmington Trust Nat. Ass'n, No. 5:13-cv-185-Oc-10PRL, 2014 WL 1152917 (M.D. Fla. March 24, 2014); Kaan v. Wells Fargo

21

Bank, N.A., 981 F. Supp. 2d 1271 (S.D. Fla. 2013); Ros v. Lasalle Bank Nat. Ass'n, No. 14-22112-CIV-Bloom, 2014 WL 3974558 (S.D. Fla. July 18, 2014); Matos v. Bank of New York, No. 14-21954-CIV-Moreno, 2014 WL 3734578 (S.D. Fla. July 28, 2014).

None of these cases, however, appears to address the distinction between dismissals with and without prejudice, the resulting res judicata effect (or absence thereof), and our conclusion that, in the absence of an adjudication on the merits, the lender's prior acceleration of the debt remains in effect. There is a dearth of decisions from other jurisdictions on the precise issue before us. However, at least one reported decision has held, as we do, that a voluntary dismissal without prejudice of an action on an accelerated debt does not, by itself, constitute a deceleration:

> Because an affirmative act is necessary to accelerate a mortgage, the same is needed to decelerate. Accordingly, a deceleration, when appropriate, must be clearly communicated by the lender/holder of the note to the obligor. Here, if [lender] intended to revoke the acceleration of the debt due under the note, it should have done so in a writing documenting the changed status. The voluntary dismissal [without prejudice] did not decelerate the mortgage because it was not accompanied by a clear and unequivocal act memorializing that deceleration.

> Cadle Co. II, Inc. v. Fountain, 281 P. 3d 1158 (Nev. 2009).

We hold that, under the facts of this case, once Deutsche Bank accelerated the debt under the terms of the mortgage and note, and in the absence of a

22

contractual reinstatement, modification by the parties, or an adjudication on the merits, the accelerated debt was not "decelerated" by an involuntary dismissal without prejudice. The accelerated payment of the debt continued to be due and the statute of limitations on the action on the accelerated debt continued to run. Because there were no "new" payments due, there could be no "new" default upon which a "new" cause of action (and newly-commenced statute of limitations) could be based. The statute of limitations expired before the filing of the subsequent action and was thus barred. We certify conflict with Evergrene Partners, Inc. v. Citibank, N.A., 143 So. 3d 954, 956 (Fla. 4th DCA 2014).

**B.        The Duration of the Mortgage Lien**

The remaining question is whether, given our holding on the statute of limitations, the lien of mortgage is null and void and must be canceled. We conclude that the trial court erred in determining that the mortgage was null and void. The trial court's determination on the first issue (and our affirmance of same) does not compel a conclusion that the mortgage itself is null and void. The issues are subject to separate statutory consideration and analysis. "[A] 'statute of limitations' is a shield that may be used as an affirmative defense; a 'statute of repose' is a sword that may terminate a lien." Matos, 2014 WL 3734578, at *3. Section 95.11(2)(c) is a statute of limitations; section 95.281 is a statute of repose,

and determines the duration of a mortgage lien. That statute provides in relevant part:

(1) The lien of a mortgage … shall terminate after the expiration of the following periods of time:

(a) If the final maturity of an obligation secured by a mortgage <u>is ascertainable from the record of it</u>, 5 years after the date of maturity.

(b) If the final maturity of an obligation secured by a mortgage <u>is not ascertainable from the record of it</u>, 20 years after the date of the mortgage, unless prior to such time the holder of the mortgage:

1. Rerecords the mortgage and includes a copy of the obligation secured by the mortgage so that the final maturity is ascertainable; or

2. Records a copy of the obligation secured by the mortgage from which copy the final maturity is ascertainable and by affidavit identifies the mortgage by its official recording data and certifies that the obligation is the obligation described in the mortgage;

in which case the lien shall terminate 5 years after the date of maturity.

(Emphasis added.)

The foregoing section "establishes an ultimate date when the lien of the mortgage terminates and is no longer enforceable." Houck Corp. v. New River, Ltd., 900 So. 2d 601, 603 (Fla. 2d DCA 2005). See also, Am. Bankers Life Assur. Co. of Florida v. 2275 West Corp., 905 So. 2d 189 (Fla. 3d DCA 2005). A statute of repose serves to establish a "definitive time limitation on a valid cause of

action", Houck, 900 So. 2d at 603, which "not only bars enforcement of an accrued cause of action but may also prevent the accrual of a cause of action where the final element necessary for its creation occurs beyond the time period established by the statute." American Bankers, 905 So. 2d at 191 (quoting WRH Mortgage, Inc. v. Butler, 684 So. 2d 325, 327 (Fla. 5th DCA 1996)).

Both parties agree that the applicable subsection is 95.281(1)(a). However, the parties disagree on the construction of that provision and its application to the instant case. The Association contends that Deutsche Bank's acceleration of the note accomplishes an acceleration of the maturity date of the note itself. The language of section 95.281(1)(a) provides that the duration of the lien is "5 years after the date of maturity." Under the facts of this case, the Association argues, the date of maturity became the date of acceleration when the Initial Action was filed on January 23, 2007, and therefore the mortgage lien terminated January 23, 2012, five years after that date of acceleration, and is extinguished.[6]

Deutsche Bank contends, and we agree, that the definitive time limitation established by section 95.281(1)(a) is based upon the fact that the final maturity "is ascertainable from the record" of an obligation secured by a mortgage. The

---

[6] For this proposition, the Association cites to Casino Espano de Habana, Inc. v. Bussel, 566 So. 2d 1313 (Fla. 3d DCA 1990). However, we find Casino inapposite, as it did not involve the construction or application of section 95.281 or a determination of the duration of a mortgage lien.

25

Legislature, by its express language, provided that the mortgage lien under section 95.281(1)(a) would terminate five years after a maturity date that can be determined from the face of a recorded document.[7] The Association's proposed date of maturity (i.e., January 23, 2007, the date of acceleration) cannot be determined from the face of the recorded mortgage. Rather, the face of the recorded mortgage in the instant case reveals a maturity date of March 1, 2036. Therefore, and pursuant to section 95.281(1)(a), the mortgage lien remains valid until March 1, 2041, five years from the date of maturity as reflected in the recorded mortgage securing the obligation. A statute of limitations and a statute of repose serve two distinct purposes and the "limitations period provided in section 95.11(2)(c) does not affect the life of the lien or extinguish the debt; it merely precludes an action to collect the debt after five years." Am. Bankers, 905 So. 2d at 192.

## IV. CONCLUSION

We affirm that portion of the trial court's order which determined that the Current Action was barred by the statute of limitations. We reverse that portion of the trial court's order which declared that the mortgage was null and void, canceled

---

[7] The determination of final maturity based upon a fixed date contained within a recorded instrument, rather than a date that is neither recorded in the public records nor easily ascertainable, certainly enhances reliability and avoids the uncertainty and other difficulties inherent in the Association's proposed construction of the statute.

same, and quieted title to the Property in favor of the Association.  We remand this cause to the trial court for further proceedings consistent with this opinion.