DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BANK OF AMERICA, N.A.,**
Appellant,

v.

**KENNETH H. GRAYBUSH** a/k/a **KENNETH HOWARD GRAYBUSH** and
**ROBIN B. GRAYBUSH** a/k/a **ROBIN BEAN GRAYBUSH,**
Appellees.

No. 4D17-1256

[August 15, 2018]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; William L. Roby, Judge; L.T. Case No. 562014CA002059 (H2).

Mary J. Walter of Liebler Gonzalez & Portuondo, Miami, for appellant.

Kendrick Almaguer and Thomas Eross Jr. of The Ticktin Law Group, P.L.L.C., Deerfield Beach, for appellees.

FORST, J.

Appellant Bank of America, N.A. ("the Bank") appeals a final judgment in favor of appellees Kenneth and Robin Graybush ("the Borrowers"). The trial court found that although the Bank had proven the elements of foreclosure, the action was time-barred by the applicable statute of limitations; accordingly, the trial court granted the Borrowers' motion for involuntary dismissal. For the reasons explained below, we reverse and remand for the trial court to enter final judgment in favor of the Bank.

## Background

On July 16, 2007, the Borrowers executed a promissory note in the amount of $148,500, secured by a mortgage on real property. Under the terms of the note, the Borrowers would make monthly installment payments to satisfy the loan. The designated maturity date of the note, for which all payments were due, was August 1, 2027. The Borrowers agreed in the note, that "[i]f on AUGUST 01, 2027, I still owe amounts under this Note, I will pay those amounts in full on that date, which is

called the 'Maturity Date.'"

Paragraph twenty-two of the mortgage had an optional acceleration clause providing that should the Borrowers default on any monthly payment, the Bank could elect to provide them with a notice of acceleration. Further, "[i]f the default is not cured on or before the date specified in the notice, Lender *at its option* may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding." (Emphasis added).

Paragraph nineteen of the mortgage provided that, after acceleration, the Borrowers could reinstate the mortgage by curing (i.e., paying everything owed under the terms of the note and mortgage) up until entry of a judgment enforcing the mortgage. Upon reinstatement of the mortgage, the mortgage "and obligations secured hereby [would] remain effective as if no acceleration had occurred." The Borrowers also agreed that "[e]ven if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time."

Beginning on October 1, 2008, the Borrowers stopped making installment payments on their mortgage. The Bank responded the following month with a "Notice of Intent to Accelerate," advising them of the default and stating in part:

> If the default is not cured on or before December 17, 2008, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time.

The Borrowers subsequently did not cure the default, and on September 29, 2009, the Bank filed a complaint to foreclose and for the first time "declare[d] the full amount payable under the Note and Mortgage to be due," pursuant to the mortgage's optional acceleration clause. The complaint alleged that the Borrowers defaulted on the note and mortgage by failing to pay the "October 1, 2008 payment and all payments due thereafter." For reasons not relevant to this appeal, the Bank voluntarily dismissed the complaint without prejudice on July 23, 2013.

On September 16, 2014, the Bank filed a second complaint for foreclosure. The complaint alleged the same October 1, 2008 default and that "all subsequent payments have not been made."

2

At trial, the Bank's witness, an employee who worked for almost nine years as a "consumer resolution team representative," testified that the Borrowers defaulted on October 1, 2008 and that the loan was still in default up to that point. The Bank introduced a payment history evidencing the missed payments. The Borrowers declined to present any evidence, and instead only raised a statute of limitations defense. At the conclusion of the Bank's case-in-chief, the Borrowers moved for involuntary dismissal on that basis.

The trial court found that the Bank proved its case by a preponderance of the evidence. However, it held that "the statute of limitations commenced to run when [the Bank] exercised the acceleration option of the Mortgage and notified [the Borrowers] of this exercise by its Notice of Intent to Accelerate mailed on November 17, 2008, unequivocally and clearly accelerating the debt should payments not be received on or before December 17, 2008." The court concluded that, based on the December 17, 2008 date, the complaint filed on September 16, 2014 was barred by the five-year statute of limitations set forth in section 95.11(2)(c), Florida Statutes (2017). As a result, the court dismissed the Bank's case without prejudice, and entered final judgment in favor of the Borrowers.

**Analysis**

"Generally, 'the issue of whether [a] claim is barred by the statute of limitations is a question of law subject to de novo review.'" *Access Ins. Planners, Inc. v. Gee*, 175 So. 3d 921, 924 (Fla. 4th DCA 2015) (alteration in original) (quoting *Beltran v. Vincent P. Miraglia, M.D., P.A.*, 125 So. 3d 855, 859 (Fla. 4th DCA 2013)).

The questions presented on appeal are whether the Bank's second foreclosure complaint was barred by the relevant statute of limitations, and if not, whether the Bank was entitled to all sums due under the note and mortgage. In Florida, the statute of limitations to file a foreclosure action is five years from the date of default. § 95.11(2)(c), Fla. Stat. (2017).

As a preliminary matter, we note that because we are dealing with an optional acceleration clause in the mortgage, acceleration "is not automatic or self-executing, but requires the lender to exercise this option and to give notice to the borrowers that it has done so." *Snow v. Wells Fargo Bank, N.A.*, 156 So. 3d 538, 542 (Fla. 3d DCA 2015); *see also Reano v. U.S. Bank Nat'l Ass'n*, 191 So. 3d 959, 961 (Fla. 4th DCA 2016).

On appeal, both parties correctly acknowledge that the trial court erred in picking December 17, 2008 as the date of acceleration. The Notice of

Intent to Accelerate did *not* constitute an acceleration despite its language that the note "will be accelerated" if the Borrowers failed to cure by that date. The Bank retained discretion to accelerate at a later date, as the full amount of principal due was not stated—only the amount due for October and any additional regular payments and charges that came due before December 17, 2008. *See Snow*, 156 So. 3d at 542 (holding that the portion of a notice letter that stated "[i]f you do not pay the full amount of the default, *we shall accelerate* the entire sum of both principal and interest due and payable . . . ," did not "convert[] the optional acceleration into a prospective, self-executing acceleration which was automatically triggered upon the failure of the [borrowers] to cure the default.").

Just as in *Snow*, the letter here did not indicate that the Bank *was exercising* its option to accelerate, but only that the Bank *intended* to accelerate at some point on *or after* December 17, 2008 should the Borrowers fail to cure. *Id.* at 542; *see also Pino v. Deutsche Bank Nat'l Tr. Co.*, 201 So. 3d 128, 128 (Fla. 3d DCA 2015). The Bank did not actually accelerate the note until it filed the first complaint and declared all sums immediately due. Typically, when a mortgage contains an optional acceleration clause, "[t]he filing of suit for foreclosure amounts to exercise of the option of the mortgagee to declare the whole of the principal sum and interest secured by the mortgage due and payable." *Campbell v. Werner*, 232 So. 2d 252, 254 n.1 (Fla. 3d DCA 1970); *see also Reano*, 191 So. 3d at 961 (similarly explaining that when a mortgage contains an optional acceleration clause, "[t]he filing of a lawsuit constitutes notice of acceleration.").

Admittedly, the Bank voluntarily dismissed the first complaint, but that had no effect on the Bank's ability to file a second complaint and re-accelerate the mortgage, given that the dismissal was without prejudice, *and* the Borrowers continued to be in default. "[A]fter the dismissal, the parties are simply back in the same contractual relationship as before, where the residential mortgage remained an installment loan, and the acceleration of the mortgage declared in the unsuccessful foreclosure action is revoked." *Bartram v. U.S. Bank Nat'l Ass'n*, 211 So. 3d 1009, 1019 (Fla. 2016). "[A] dismissal without prejudice would allow a mortgagee to bring another foreclosure action premised on the same default." *Id.* at 1020.

"A voluntary dismissal [without prejudice] is not an adjudication on the merits and therefore will not support a claim of *res judicata*." *Evergrene Partners, Inc. v. Citibank, N.A.*, 143 So. 3d 954, 956 (Fla. 4th DCA 2014). Accordingly, "after the dismissal, the parties are simply placed back in the same contractual relationship as before, where the residential mortgage

4

remained an installment loan, and the acceleration of the mortgage declared in the unsuccessful foreclosure action is revoked." *Bartram*, 211 So. 3d at 1019.

Even though the Borrowers concede error as to the trial court's finding that the date of acceleration was December 17, 2008, they argue that the trial court's final judgment should be affirmed on alternative grounds, based on the Bank's allegation in its second foreclosure action that the Borrowers defaulted on October 1, 2008. The Borrowers point out that this date is more than five years from the date of filing the second complaint—September 16, 2014—and so the complaint should still be dismissed as barred by the statute of limitations. To support their argument, the Borrowers cite to *Collazo v. HSBC Bank USA, N.A.*, 213 So. 3d 1012 (Fla. 3d DCA 2016), which held a second complaint was barred by the statute of limitations because it alleged a default date more than five years prior to the commencement of the second action. *Id.* at 1013.

We disagree with the Borrowers that the complaint was barred by the statute of limitations. While the Bank needed to allege a default date for which the statute of limitations had not yet run, *Bartrum*, 211 So. 3d at 1020, the Borrowers overlook the crucial fact that the complaint also alleged *continuing defaults* ever since the October 1, 2008 default. Alleging and proving separate and continuing defaults, some of which fall within five years of the filing of the complaint, satisfies the statute of limitations. *Depicciotto v. Nationstar Mort. LLC*, 225 So. 3d 390, 391 (Fla. 4th DCA 2017); *see also Kebreau v. Bayview Loan Servicing, LLC*, 225 So. 3d 255, 256 (Fla. 4th DCA 2017) (holding that "the complaint was not barred by the statute of limitations where it alleged continuing defaults"); *Desylvester v. Bank of N.Y. Mellon ex rel. Holders of Alt. Loan Tr. 2005-62, Mortg. Pass-Through Certificates Series 2005-62*, 219 So. 3d 1016, 1020 (Fla. 2d DCA 2017) (concluding that "the allegations of the complaint in the underlying action that the borrowers were in a continuing state of default at the time of the filing of the complaint was sufficient to satisfy the five-year statute of limitations").

The Borrowers' reliance on *Collazo* is misplaced because, unlike in *Depicciotto*, *Kebreau*, or *Desylvester*, the bank in that case did not allege continuing defaults that took place within five years of filing the complaint. *Collazo*, 213 So. 3d at 1013 ("In contrast to these . . . cases, the foreclosure action in the case before us was commenced on January 24, 2014, based on a default in payment alleged to have occurred on April 1, 2008. Counsel for [the bank] insisted on trying the case on the basis of that default."); *see also HSBC Bank USA, Nat'l Ass'n for Registered Holders of Nomura Home Equity Home Loan, Inc. v. Estate of Petercen*, 227 So. 3d 640, 642 (Fla. 4th

DCA 2017) (noting that *Collazo* resulted in a dismissal "because a single date of default was alleged in the . . . complaint [at issue]").

Having found that the Bank's complaint was timely, we further hold that, in light of the competent, substantial evidence supporting the trial court's finding that the Bank proved its case, the Bank was entitled to all sums alleged and proven due under the note and mortgage—even those sums due more than five years from the date of filing the complaint. In doing so, we agree with the holding and rationale of *Gonzalez v. Federal National Mortgage Association,* No. 3D17-1246, 2018 WL 3636467 at *3 (Fla. 3d DCA Aug. 1, 2018), which dealt with virtually identical facts on this issue. We also certify conflict with *Velden v. Nationstar Mortgage, LLC*, 234 So. 3d 850 (Fla. 5th DCA 2018), which would expressly exclude the Bank from recovering any such monies. *Id.* at 851-52.

We note that the *Velden* majority principally relied on five cases in limiting entitlement to installment payments to within five years of filing of a complaint. *Id.* However, in two of the cases, the lender had not accelerated the note; rather, it was suing for judgment on individual installments. *Greene v. Bursey*, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999); *Cent. Home Tr. Co. v. Lippincott*, 392 So. 2d 931, 932-33 (Fla. 5th DCA 1980). In two other cases, the plaintiff bank conceded that it could not recover for sums due more than five years prior to the commencement of the action, so the cases did not decide the issue. *U.S. Bank, N.A. v. Diamond*, 228 So. 3d 177, 179 (Fla. 5th DCA 2017); *U.S. Bank Nat'l Ass'n v. Bartram*, 140 So. 3d 1007, 1009 (Fla. 5th DCA 2014). The last case was a quiet title action. *Kaan v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1271, 1272-74 (S.D. Fla. 2013). The court there held the lender could not sue on defaults more than five years past due, but it did not speak to entitlement to payments more than five years past due. *Id.*

Our holding is consistent with the view expressed by the concurring opinion in *Velden,* which in turn gave deference to Justice Lawson's recent concurrence in *Bollettieri Resort Villas Condominium Ass'n, Inc. v. Bank of New York Mellon*, 228 So. 3d 72 (Fla. 2017).[1] *See Velden*, 234 So. 3d at 852-53 (Lambert, J., concurring). Justice Lawson's opinion noted that "[u]nder the terms of most long-term notes and mortgages . . . the total amount due under the note does not become due until maturity—most commonly thirty years after signing." *Bollettieri*, 228 So. 3d at 74 (Lawson, J., concurring). Given that a long-term note is just that, a promise to pay

---

[1] Justice Lawson acknowledged that the views expressed in his concurrence were of no precedential value, but he invited the district courts of appeal to reconsider this issue on their own. *Bollettieri*, 228 So. 3d at 75 (Lawson, J., concurring).

a determinate sum by a determinate date, Justice Lawson concluded that the failure to pay the entire amount due by the final due date—i.e., maturity date—is the last element of a foreclosure cause of action accruing the applicable statute of limitations. *Id.*

We readily agree. When a mortgage contains an optional acceleration clause, "forbearance [to collect all sums due upon a monthly default] will not constitute a waiver or defense against future collection of all sums due and owing under the note." *Id.* This is especially true when borrowers contractually approve such a provision in a note or mortgage. And here, the Borrowers expressly did so by agreeing in the note that "[i]f on AUGUST 01, 2027, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the 'Maturity Date.'" They also agreed, in no ambiguous terms, that "[e]ven if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time."[2]

Accordingly, we hold that based on the contractual provisions of the note, neglecting to sue for missed payments beyond five years did not waive the Bank's entitlement to all sums due on a later date, when that later date did not lie five years beyond a monthly default, or five years beyond the maturity date of the note. *See Conner v. Coggins*, 349 So. 2d 780, 781-82 (Fla. 1st DCA 1977) (noting that when a mortgage contains an optional acceleration clause, the lender could have either brought its foreclosure suit within five years of a monthly default, or within five years from the date of the maturity of the note).

In the scenario in which a bank chooses to accelerate all sums due based on a monthly default, we note that the supreme court in *Bartram* held that "with each subsequent default, the statute of limitations runs from the date of each new default providing the mortgagee the right, but not the obligation, to accelerate *all sums* then due under the note and mortgage." *Bartram*, 211 So. 3d at 1019 (emphasis added). With each new default, the bank "had the right to file a subsequent foreclosure action—*and to seek acceleration of all sums due under the note*—so long as the foreclosure action was based on a subsequent default, and the statute of limitations had not run on that particular default." *Id.* at 1021 (emphasis added); *accord Gonzalez*, 2018 WL 3636467 at *2 (similarly

---

[2] Just like here, "[t]he *Bollettieri* contract also clearly provides that the lender or holder may forbear and hold off on accelerating the note—and that forbearance will not constitute a waiver or defense against future collection of all sums due and owing under the note." *Bollettieri*, 228 So. 3d at 74 (Lawson, J., concurring).

emphasizing the bank's right to accelerate "*all sums* due under the note" provided the action was timely filed); *Desai v. Bank of N.Y. Mellon Tr. Co.*, 240 So. 3d 729, 730 (Fla. 4th DCA 2018) (same).

Alternatively, if a lender chooses not to accelerate all sums due based on a monthly default, we have previously held the lender can wait until the maturity date to recover all sums due. *Greene*, 733 So. 2d at 1115 ("It is undisputed that [the lender] never accelerated the note even though, under the terms of the guaranty, he had the option of doing so upon [borrower's] default in any given month. Thus, the statute of limitations on the underlying note would not have commenced until it matured on April 1, 1991.").

Very recently, a federal bankruptcy court addressed the issue presented in this case and in *Velden*. *See In re BCML Holding LLC*, No. 18-11600-EPK, 2018 WL 2386814 (Bankr. S.D. Fla. May 24, 2018). In expressing "[a]maz[ement]" with respect to the *Velden* opinion, which it deemed "not well founded in the law," *id.* at *2, the court opined, in relevant part,

> When one is considering an accelerated obligation, the triggering default and its relationship to the statute of limitations is completely separate from the debt that is subject to judgment and collection. The Florida Supreme Court in *Bartram* itself explains that the debt which is the subject of foreclosure is the accelerated debt, meaning the entire amount due under the mortgage loan. The Florida Supreme court stated: "[W]ith each subsequent default, the statute of limitations runs from the date of each new default providing the mortgagee the right, but not the obligation, to accelerate all sums then due under the note and mortgage." *Bartram*, 211 So. 3d at 1019. The Florida Supreme Court made it clear that in a subsequent foreclosure the lender could pursue the entire accelerated debt. *In other words, the statute of limitations is a procedural bar only. Once a timely action is filed, the remedy is controlled by contract.*
>
> . . . .
>
> In any case, the typical lender files suit seeking acceleration of its debt such that the entire sum owing, including principal, interest, advances, costs, and fees, will be included in the judgment. That entire debt . . . is sought to be liquidated in the foreclosure action. When a lender seeks judgment on an

accelerated debt, it makes no sense to suggest that any component of that accelerated obligation should be excluded from the judgment because it "came due" more than five years prior. It did not come due more than five years prior. It came due upon acceleration. It is all due presently, both what was to be paid on prior installment dates and what would otherwise be due on future installment dates. The installment dates no longer matter for purposes of the accelerated debt; it is all one debt.

*In re BCML Holding LLC*, 2018 WL 2386814 at *2 (emphasis added). *See also Gonzalez*, 2018 WL 3636467 at *3 ("[W]hen considering an accelerated obligation, while the triggering default must occur within the five year limitations period, the debt that is subject to judgment and collection is the accelerated debt, i.e., the entire amount due under the mortgage loan [and not individual installments]").

The second complaint in the instant case was timely filed, and not procedurally barred, because it alleged continuing defaults occurring within five years of the complaint. The Bank subsequently seeking all sums due was remedially valid, and not substantively limited, given the contractual provisions in the note expressly allowing the Bank to recover all sums due at a later date, even if the Bank forbore foreclosing based on defaults more than five years prior.[3]

When a note contains an optional acceleration clause, a lender only runs out of opportunities to foreclose, under the applicable statute of limitations, after five years of the latest default, *or* after five years of the date of maturity of the note. But, should a lender bring a timely action under either scenario, it is entitled to all sums due under the note and mortgage—should the note and mortgage contractually provide. Here, it does—"Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time."

**Conclusion**

The trial court erred in finding that the notice letter's deadline to cure

---

[3] *See Velden*, 234 So. 3d at 853 (Lambert, J., concurring) ("Under Justice Lawson's analysis [in *Bollettieri,*] [the bank] should not be deemed to have waived or forfeited its right to have included in the final judgment of foreclosure those monies owed for non-payments on the note that are more than five years from the filing of the lawsuit based on the statute of limitations defense.").

was the acceleration date. Rather, the mortgage was accelerated when the Bank filed its first, and then second, complaint. Though the second complaint alleged the same October 1, 2008 default date, which was more than five years prior to filing, it also alleged that "all subsequent payments have not been made," which included defaults satisfying the applicable five-year statute of limitations.

The Bank did not waive entitlement to missed payments due more than five years prior to the filing of the second complaint. The statute of limitations is only a procedural bar to filing a foreclosure complaint. Upon a timely filing, the contractual provisions of the note and mortgage take effect to control the remedy. And here, the Borrowers and Bank expressly agreed in the note that the Borrowers would either pay *all sums* upon acceleration, or *all sums due* upon maturity of the note. Given that the Borrowers ceased payments, and the Bank timely chose to accelerate all sums based on the Borrowers' defaults, we reverse and remand for the trial court to enter final judgment in favor of the Bank, and award all sums due under the note dating back to October 1, 2008.

*Reversed and remanded with instructions; conflict certified.*

DAMOORGIAN and KLINGENSMITH, JJ., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing***