No. 122,179

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILMINGTON SAVINGS FUND SOCIETY, FSB
d/b/a/ Christiana Trust as Owner Trustee of the
Residential Credit Opportunities Trust III,
*Appellant*,

v.

ASHLEY A. HOLVERSON, et al.,
*Appellees*.

SYLLABUS BY THE COURT

1.

In accordance with *FGB Realty Advisors, Inc. v. Keller*, 22 Kan. App. 2d 853, 854, 923 P.2d 520 (1996), when a note contains a clause allowing a noteholder to accelerate the borrower's loan due date upon the borrower's default, the noteholder must take two steps to exercise the note's acceleration clause, which results in triggering K.S.A. 60-511(1)'s five-year statute of limitations: Under the first step, the noteholder must clearly and unequivocally express an intention to accelerate the loan. Under the second step, the noteholder must take some affirmative act toward enforcing that intention to accelerate the loan.

2.

Under this first step of the test for exercising a note's acceleration clause and triggering K.S.A. 60-511(1)'s five-year statute of limitations, a noteholder's threat of some future loan acceleration does not constitute a clear and unequivocal expression of the noteholder's intention to accelerate the loan. Instead, to constitute a clear and unequivocal expression of an intention to accelerate the loan, the noteholder must state

that it is exercising the note's acceleration clause and demanding payment of the loan in full.

3.

Under the facts of this case, where the noteholder sent a letter telling the borrowers that it would exercise the note's acceleration clause should the borrowers fail to cure their default by a certain future date, the noteholder did not accelerate the borrowers' loan due date by sending this letter. And in turn, the noteholder did not trigger K.S.A. 60-511(1)'s five-year statute of limitations. By telling the borrowers that it would invoke their note's acceleration clause should they fail to cure their default by a certain future date, the noteholder merely made a conditional threat to accelerate the borrowers' loan due date. By their very nature, a conditional threat cannot constitute a clear and unequivocal expression of a noteholder's intention to accelerate a borrowers' loan.

Appeal from Johnson District Court; RHONDA K. MASON, judge. Opinion filed May 14, 2021. Reversed and remanded with directions.

*William H. Meyer*, of Southlaw, P.C., of Overland Park, for appellant.

*Tai J. Vokins*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Lawrence, for appellee Ashley A. Holverson.

Before POWELL, P.J., GREEN and HILL, JJ.

GREEN, J.: This is a summary judgment case involving the foreclosure of a real estate note and mortgage. Wilmington Savings Fund Society, FSB d/b/a Christiana Trust as Owner Trustee of the Residential Credit Opportunities Trust III (Wilmington) appeals the district court's grant of summary judgment in favor of the borrowers: Ashley A. Holverson and Timothy J. Holverson. The Holversons claimed that Wilmington's foreclosure action was barred by K.S.A. 60-511(1)'s five-year statute of limitations. The

trial court agreed and ruled against Wilmington. On appeal, Wilmington contends that the foreclosure action here was timely filed. We agree. Thus, we reverse and remand for further proceedings consistent with this opinion.

FACTS

On January 22, 2009, the Holversons executed a note as well as a mortgage on their house that secured the note. Under the note, Countrywide Bank, FBS (Countrywide) agreed to lend the Holversons $244,200, and the Holversons agreed to repay their loan to Countrywide at a rate of $1,348.48 per month plus interest and fees. The maturity date for the Holversons' loan was February 1, 2039. Nevertheless, the Holversons' note and mortgage also contained an acceleration clause. Although the acceleration clause in the Holversons' note and mortgage differed slightly, both provided that Countrywide, or any other party it ultimately assigned the Holversons' note and mortgage to, could accelerate the Holversons' loan maturity date should they default on their loan. Significantly, the acceleration clause in the Holversons' note stated:

> "If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary [of Housing and Urban Development] in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default."

Eventually, Countrywide assigned the Holversons' note and mortgage to Bank of America (BOA). Afterwards, in December 2010, the Holversons started missing their monthly mortgage payments. Then, on January 11, 2011, BOA sent the Holversons a letter entitled "Notice of Intent to Accelerate."

In this letter, BOA told the Holversons that they had defaulted on their loan by missing their monthly mortgage payments beginning in December 2010. Also, BOA told

3

the Holversons, in writing, the following: (1) that they had the right to cure their default, which totaled $5,568.65, "on or before February 10, 2011"; (2) that if they failed to cure their default "on or before February 10, 2011, [their] mortgage payments **[would] be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings [would] be initiated at that time"; and (3) that their "default [would] not be considered cured unless [it] receive[d] 'good funds' in the amount of $5,568.65 on or before February 10, 2011."

The Holversons were unable to cure their default on or before February 10, 2011. But nothing immediately happened upon the Holversons' failure to cure their default. Instead, it seems that the next contact BOA had with the Holversons occurred on October 17, 2012. On that date, BOA sent a letter to the Holversons stating that it intended to initiate foreclosure proceedings against them. The letter further stated that the Holversons needed to pay it $42,529.86 to "reinstate" their loan or "to bring [their] account current." Also, the letter explained that the Holversons' outstanding principal balance under their mortgage totaled $238,053.18.

A few months later, on January 22, 2013, BOA petitioned the district court to foreclose on the Holversons' mortgage. BOA's petition provided that because the Holversons had been unable to cure their default after they started missing their monthly mortgage payments beginning in December 2010, their "total amount of indebtedness due under the terms of [their] Note and Mortgage ha[d] been accelerated and [was] due." As it did in its October 17, 2012 letter, BOA alleged that in addition to unpaid interest, late charges, and fees, the Holversons owed it the outstanding principal balance of their mortgage, which totaled $238,053.18.

Nevertheless, on September 12, 2016, BOA moved to voluntarily dismiss its foreclosure action against the Holversons. In its motion, BOA asserted that "it ha[d] decided not to pursue further collection against [the Holversons'] Note and Mortgage at

4

[that] time." It also requested that the district court "fully reinstate[]" the Holversons' note and mortgage should it grant its voluntary dismissal motion. The next day, the district court "sustained" BOA's voluntary dismissal motion, dismissing its foreclosure action without prejudice.

Although not definitively established in the record on appeal, it seems that BOA moved to voluntarily dismiss its foreclosure action against the Holversons because it had already assigned the Holversons' note and mortgage to some other party. In any case, the Secretary of Housing and Urban Development (Secretary) eventually became owners of the Holversons' note and mortgage. Then, on December 2, 2016, the Secretary assigned the Holversons' note and mortgage to Bayview Loan Servicing, LLC (Bayview).

Several days following this assignment, on December 14, 2016, Bayview filed a petition to foreclose on the Holversons' note and mortgage with the district court. Bayview's foreclosure petition largely paralleled BOA's earlier foreclosure action. And like BOA's foreclosure petition, Bayview alleged that because the Holversons had been unable to cure their default after they started missing their monthly mortgage payments beginning in December 2010, their "total amount of indebtedness due under the terms of [their] Note and Mortgage ha[d] been accelerated and [was] due."

Although the Holversons, who were now divorced, answered Bayview's foreclosure petition separately, both argued that Bayview's foreclosure action was time-barred. In furtherance of this argument, Ashley moved for summary judgment against Bayview, which Timothy later joined.

In their joint motion for summary judgment, the Holversons asserted that Bayview filed its foreclosure petition beyond K.S.A. 60-511(1)'s five-year statute of limitations. In making this argument, the Holversons relied upon *FGB Realty Advisors, Inc. v. Keller*, 22 Kan. App. 2d 853, 854, 923 P.2d 520 (1996). According to the Holversons, the *FGB*

*Realty* decision established that K.S.A. 60-511(1)'s five-year statute of limitations started to run against any holders of their note and mortgage on their failure to cure their default by the February 10, 2011 deadline as stated in BOA's January 11, 2011 Notice of Intent to Accelerate letter. The Holversons then asserted that Bayview needed to file its foreclosure petition against them no later than September 8, 2016, to not be time-barred under K.S.A. 60-511(1).

In calculating Bayview's deadline to timely file its foreclosure petition, the Holversons conceded that 211 days had to be added to K.S.A. 60-511(1)'s 5-year statute of limitations because this was how long BOA's foreclosure action against them was extended or tolled while Ashley's federal bankruptcy cases were pending. Hence, the Holversons determined that Bayview needed to file its foreclosure petition against them no later than September 8, 2016, because this date was 5 years and 211 days after the February 10, 2011 deadline. And the Holversons thus asserted that Bayview's foreclosure petition was untimely under K.S.A. 60-511(1) because it filed its foreclosure petition on December 14, 2016.

But shortly after the Holversons moved for summary judgment against Bayview, Bayview moved to substitute Wilmington as the proper plaintiff in its foreclosure action. Although Wilmington has not included Bayview's motion in the record on appeal, it is apparent that Bayview made such a motion because on July 14, 2017, the district court entered an order substituting Wilmington in place of Bayview. In its order, the district court simply stated that it was granting Bayview's motion because Bayview's "statements and allegations" in its motion were "true."

As a result, although it seems likely that Bayview made its substitution motion because it had assigned the Holversons' note and mortgage to Wilmington, which in turn allowed the district court to substitute Wilmington as the proper plaintiff under K.S.A. 60-255(c), we see nothing in the record on appeal which fully explains the district court's

6

reason for granting Bayview's substitution motion. Even so, because the parties have not challenged the propriety of the district court's substitution order, we assume for the purpose of this appeal that on the filing of the district court's substitution order, Bayview's December 14, 2016 foreclosure petition against the Holversons effectively became Wilmington's December 14, 2016 foreclosure petition against the Holversons. And for this same reason, we will in the future refer to Bayview's December 14, 2016 foreclosure petition as Wilmington's December 14, 2016 foreclosure petition.

Immediately after the district court substituted Wilmington as the proper plaintiff, Wilmington responded to the Holversons' summary judgment motion. In its response, Wilmington conceded that the timelines of its foreclosure petition were controlled by K.S.A. 60-511(1)'s five-year statute of limitations. But it contended that BOA's February 10, 2011 deadline for the Holversons to cure their default did not trigger K.S.A. 60-511(1)'s five-year statute of limitations.

In particular, it argued that despite the Holversons' arguments otherwise, the *FGB Realty* decision supported that BOA's January 11, 2011 Notice of Intent to Accelerate Letter did not accelerate the Holversons' loan on their failure to cure their default by the February 10, 2011 deadline. It argued that "stat[ing] that the loan [would] be accelerated if the default [was] not cured within 30 days" was neither a clear and unequivocal expression of BOA's intention to accelerate the Holversons' loan nor an affirmative act towards enforcing its intention to accelerate the Holversons' loan as required to trigger K.S.A. 60-511(1)'s five-year statute of limitations under *FGB Realty*'s precedent. It also argued that the first affirmative act BOA took to accelerate the Holversons' loan occurred when BOA filed its foreclosure petition against the Holversons on January 22, 2013. Thus, Wilmington alleged that K.S.A. 60-511(1)'s five-year statute of limitations did not start to run until BOA filed its foreclosure petition on January 22, 2013, rendering its December 14, 2016 foreclosure petition timely filed.

The district court granted the Holversons' summary judgment motion. In doing so, the district court ruled that Wilmington's December 14, 2016 foreclosure petition was untimely because "BOA [had] made a clear and unequivocal expression to exercise its option to accelerate the loan beginning February 11, 2011." It therefore concluded that even when adding the 211 days that Ashley's federal bankruptcy cases tolled K.S.A. 60-511(1)'s five-year statute of limitations, Wilmington's December 14, 2016 petition was untimely because it needed to file its foreclosure petition no later than September 8, 2016.

Wilmington timely appealed.

ANALYSIS

Wilmington's principal argument on appeal is that the district court erred by granting summary judgment in favor of the Holversons because in doing so, the district court misinterpreted the *FGB Realty* decision and the plain language of BOA's January 11, 2011 Notice of Intent to Accelerate letter. As it did below, Wilmington argues that the *FGB Realty* decision supports that K.S.A. 60-511(1)'s five-year statute of limitations did not start running against any holder of the Holversons' note and mortgage on the Holversons' failure to cure their default by the February 10, 2011 deadline. Instead, it contends that the only act constituting a clear an unequivocal expression of BOA's intention to exercise its option to accelerate the Holversons' note and mortgage was BOA's January 22, 2013 filing of its foreclosure petition.

In support of this argument, Wilmington points to the plain language of BOA's January 11, 2011 Notice of Intent to Accelerate letter. It argues that this letter cannot constitute a clear and unequivocal expression of BOA's intention to exercise its option to accelerate the Holversons' loan because in this letter, BOA "merely *declared* [its] intent to accelerate" without "[*exercising*] its right to accelerate." Thus, Wilmington asks this court to reverse the district court's summary judgment order and remand to the district

8

court for further proceedings as it filed its December 14, 2016 foreclosure petition less than four years after BOA triggered K.S.A. 60-511(1)'s five-year statute of limitations by filing its January 22, 2013 foreclosure petition.

Although Ashley has filed an appellee's brief responding to Wilmington's arguments, Timothy has not. Instead, through a notice filing, Timothy has adopted each of Ashley's arguments in her appellee's brief. As a result, although Ashley has individually responded to Wilmington's appellant's brief, Ashley's and Timothy's appellee arguments are identical. And for this reason, we will consider their arguments jointly as the Holversons' arguments.

On appeal, the Holversons contend that it is Wilmington that has misinterpreted the *FGB Realty* decision as well as BOA's January 11, 2011 Notice of Intent to Accelerate letter. The Holversons assert that this court's *FGB Realty* decision establishes that so long as a noteholder takes some additional step to enforce its intention to accelerate a loan's repayment date, a noteholder's notice that it intends to accelerate a loan triggers K.S.A. 60-511(1)'s five-year statute of limitations. Then, the Holversons contend that BOA complied with the preceding steps in doing the following: (1) in providing them notice of its intent to accelerate their loan should they not cure their default by February 10, 2011, as stated in its January 11, 2011 Notice of Intent to Accelerate letter and (2) in afterwards taking affirmative steps towards enforcing its intention to accelerate their loan by not declaring their default cured, in imposing late fees, in imposing inspection fees, by paying hazard insurance, and in paying mortgage insurance. Thus, they conclude that the district court properly determined that Wilmington's December 14, 2016 foreclosure petition was not timely filed because their failure to cure their default by the February 10, 2011 deadline triggered K.S.A. 60-511(1)'s five-year statute of limitations.

9

*Review of the Applicable Law*

As indicated earlier, the parties' arguments hinge upon the *FGB Realty* court's interpretation of K.S.A. 60-511(1). Thus, in addressing the parties' arguments, we are guided by this court's decision in *FGB Realty*.

K.S.A. 60-511(1) provides that "[a]n action upon any agreement, contract or promise in writing . . . shall be brought within five (5) years." Determining whether a plaintiff's action is time-barred under the applicable statute of limitations is a question of law over which this court exercises unlimited review. *Garcia v. Ball*, 303 Kan. 560, 571, 363 P.3d 399 (2015). Similarly, when no facts are in dispute, determining whether the district court properly granted a party's summary judgment motion constitutes a question of law over which this court exercises unlimited review. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013).

In *FGB Realty*, this court considered whether FGB Realty's foreclosure action against the Kellers was time-barred under K.S.A. 60-511(1)'s five-year statute of limitations. There, the Kellers had defaulted on their note in 1988. Sometime in 1989, the Kellers started receiving letters from the previous holders of their note and mortgage threatening foreclosure. Eventually, FGB Realty acquired the Kellers' note and mortgage. Afterwards, on July 27, 1993, FGB Realty sent the Kellers a letter stating it was exercising the Kellers' promissory "note's option to accelerate the entire balance of the loan and that it was then due." 22 Kan. App. 2d at 854. Then, on March 23, 1995, FGB Realty filed its foreclosure petition against the Kellers.

But on FGB Realty's filing of its foreclosure petition, the Kellers moved to dismiss FGB Realty's foreclosure petition as untimely under K.S.A. 60-511(1)'s five-year statute of limitations. The Kellers argued that because the previous holders of their note and mortgage started threatening foreclosure against them in 1989, K.S.A. 60-511(1)'s five-

10

year statute of limitations was triggered then. The district court accepted the Kellers' argument, dismissing FGB Realty's foreclosure action as time-barred. Then, FGB Realty appealed to this court. On appeal, FGB Realty argued that its July 27, 1993 demand letter, not the letters from the Kellers' prior holders of their note and mortgage threatening foreclosure, triggered K.S.A. 60-511(1)'s five-year statute of limitations. In the end, this court agreed with FGB Realty, reversing and remanding to the district court for further proceedings. 22 Kan. App. 2d at 856.

In reaching its decision, this court first outlined the rules on acceleration clauses in notes and mortgages:

"Kansas courts have recognized that the acceleration clause in a note or mortgage dictates when a foreclosure action accrues for purposes of the statute of limitations. . . . [I]f the clause provides the holder of the note with the option to mature the entire debt upon default, the statute of limitations does not begin to run until the holder exercises the option to accelerate the entire amount. *Kennedy v. Gibson*, 68 Kan. 612, 617, 75 P. 1044 (1904). If the holder elects not to exercise the option upon default, 'the statute would not run earlier than the time originally fixed for the maturity of the note.' 68 Kan. at 617.

. . . .

"It is well settled that the holder of a note containing an option to accelerate must clearly and unequivocally express an intention to exercise the option and then affirmatively act toward enforcing that intention in order to properly exercise the option. See Annot., 5 A.L.R.2d 968, 970; Annot., 161 A.L.R. 1211, 1212 (citing cases from 22 states).

"In *Wentland v. Stewart*, 236 Iowa 661, 666, 19 N.W.2d 661 (1945), the Iowa Supreme Court held that the 'mere threat to commence suit, followed by a subsequent statement that "all is now due," is not sufficient either to set in motion the limitations statute or to establish an earlier maturity date for any purpose.' The court emphasized that the statute of limitations begins running 'from the *exercise* of the option but not from the mere *declaration* that the principal is due.' 236 Iowa at 666. The court noted that after the declaration occurred in that case, no affirmative acts were made toward enforcing the declared intent. 236 Iowa at 667." 22 Kan. App. 2d at 854-55.

11

Then, after considering the relevant law on acceleration clauses, this court considered the plain language of the acceleration clause in the Kellers' note. This court determined that under the clause's plain language, a lender had to notify the Kellers if it exercised its right to accelerate their loan's repayment date and provide the Kellers time to cure their default. 22 Kan. App. 2d at 855. Also, this court determined that under the clause's plain language, "once the [the Kellers had been] properly notified and given an opportunity to cure [their] default, further demands [were] not required before the lender [could] foreclose on [their] note and mortgage." 22 Kan. App. 2d at 855.

Finally, after considering the plain language of the acceleration clause in the Kellers' note, this court considered if the letters from the previous holder of the Kellers' note and mortgage threatening foreclosure in 1989 triggered K.S.A. 60-511(1)'s five-year statute of limitations. This court ruled that those letters did not trigger K.S.A. 60-511(1)'s five-year statute of limitations because "nothing in the record indicat[ed] that the letters sent by the prior holders of the note clearly and unequivocally stated that they were exercising the option to accelerate the entire debt." 22 Kan. App. 2d at 856.

In reaching this ruling, this court pointed out that the 1989 letters from the previous noteholders merely demanded payment and notified the Kellers of their right to cure their default without exercising its option to accelerate "at that time." 22 Kan. App. 2d at 856. In contrast, it found that FGB Realty's July 27, 1993 demand letter constituted "a formal demand in which it clearly and unequivocally stated that it was electing to exercise the option to accelerate the balance of the loan." 22 Kan. App. 2d at 856. It therefore concluded that FGB Realty's July 27, 1993 demand letter triggered K.S.A. 60-511(1)'s five-year statute of limitation. It added that FGB Realty followed through with its intention to accelerate the Kellers' loan by "also affirmatively fil[ing] a foreclosure action in March 1995." 22 Kan. App. 2d at 856.

12

To summarize, the *FGB Realty* court held that a noteholder must take two steps to trigger K.S.A. 60-511(1)'s five-year statute of limitations:  Under the first step, the noteholder must "clearly and unequivocally express an intention" to accelerate the loan. 22 Kan. App. 2d at 855. This means that a noteholder's letter containing a threat of some future acceleration of the loan will not constitute a clear and unequivocal expression of an intention to accelerate the loan. Nor will a statement that the borrower's entire obligation under the loan is now due suffice. Instead, to comply with this step, a noteholder's letter must explain that it is "electing to exercise the option to accelerate the balance of the loan." 22 Kan. App. 2d at 856. Then, under the second step of this two-step process, the noteholder must "affirmatively act toward enforcing that intention" to accelerate the loan. 22 Kan. App. 2d at 855.

Although the parties' arguments rely almost entirely on this court's *FGB Realty* decision, at this juncture, it is worth reviewing other caselaw concerning when a noteholder accelerates the borrower's loan's maturity date and therefore triggers the applicable statute of limitations. In Kansas, there are numerous appellate case involving foreclosure actions. Yet, the *FGB Realty* decision seems to be the only Kansas appellate decision discussing what constitutes adequate notice of acceleration that can trigger K.S.A. 60-511(1)'s five-year statute of limitations.

For example, the most recent Kansas appellate decisions involving acceleration clauses concern issues involving anti-waiver provisions. See *Foundation Property Investments, LLC v. CTP, LLC*, 286 Kan. 597, 603, 186 P.3d 766 (2008) (rejecting a lender's argument that the acceleration clause in the disputed note also constituted an anti-waiver clause); and *First Security Bank v. Buehne*, No. 121,765, 2020 WL 5580498, at *4 (Kan. App. 2020) (unpublished opinion) (declining to consider the borrower's argument that the lender's foreclosure action was time-barred under K.S.A. 60-511[1] because the borrower's note contained an anti-waiver provision), *petition for rev. granted* January 22, 2021. Meanwhile, the older Kansas appellate decisions concerning

acceleration clauses do not specifically address what constitutes adequate notice of acceleration either. See *Tarkowski v. Banks*, 151 Kan. 898, 904, 101 P.2d 893 (1940) (holding that the borrowers had the burden to prove the lender accelerated the loan); *Standard Life Ass'n v. Merrill*, 147 Kan. 121, 75 P.2d 825 (1938) (holding that a savings statute rendered the lender's foreclosure action timely although acceleration occurred more than five years prior); *Union Central Life Ins. Co. v. Irrigation Loan & Trust Co.*, 146 Kan. 550, 557, 73 P.2d 72 (1937) (holding that the borrower's absence from the state tolled the statute of limitations regardless of when the lender accelerated the loan); and *Kennedy v. Gibson*, 68 Kan. 612, 75 P. 1044 (1904) (addressing what acceleration clause should control if the clauses in a borrower's note and mortgage materially differed).

Nevertheless, other appellate courts have more fully addressed what constitutes adequate notice of acceleration that can trigger the running of the statute of limitations. In *United States v. Gilmore*, 698 F.2d 1095, 1097 (10th Cir. 1983), for instance, the Tenth Circuit Court of Appeals held that the lender's letter "notif[ying] the [borrowers] that it [had] exercised the acceleration clause and demanded payment in full" constituted adequate notice of acceleration that "trigger[ed] the limitation period." And in *Don Anderson Enterprises, Inc. v. Entertainment Enterprises, Inc.,* 589 S.W.2d 70, 72 (Mo. Ct. App. 1979), the Missouri Court of Appeals held that the following language in the lender's letter to the borrower constituted a "clear and unequivocal" invocation of the acceleration clause:

> "'Notice is hereby given that the note dated October, 1975, in the face amount of $24,000 is in default, and that the holder thereof has declared the whole sum due and payable. Demand is hereby made for payment of the entire amount of the outstanding debt. The holder of the note, by giving this notice, does not waive any other right under the terms of the Note.'"

In contrast, in *Bank of America, N.A. v. Graybush*, 253 So. 3d 1188 (Fla. Dist. Ct. App. 2018), the Florida District Court of Appeals held that a letter sent by BOA to the

14

borrower entitled "Notice of Intent to Accelerate" did not constitute adequate notice resulting in acceleration of the borrower's loan. There, in November 2008, after the borrowers stopped making their mortgage payments, BOA sent the borrowers a letter entitled, "Notice of Intent to Accelerate." 253 So. 3d at 1190. This letter stated: "'If the default [was] not cured on or before December 17, 2008, the [borrowers'] mortgage payments **[would] be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings [would] be initiated at that time.'" 253 So. 3d at 1190. After BOA sent this letter, however, the borrowers were unable to cure their default. As a result, on September 29, 2009, BOA petitioned the district court to foreclose on the borrower's mortgage.

Although BOA voluntarily dismissed this foreclosure action, it ultimately filed another foreclosure action against the borrowers on September 16, 2014. But the borrowers moved to dismiss BOA's second foreclosure action against them, arguing that BOA's September 16, 2014 foreclosure petition was untimely under Florida's five-year statute of limitations. The district court agreed, ruling that Florida's five-year statute of limitations was triggered upon the borrowers' failure to cure their default by the December 17, 2008 deadline listed in BOA's November 17, 2008 Notice of Intent to Accelerate letter. In turn, the district court dismissed BOA's second foreclosure action as time-barred because BOA filed its petition more than five years after it initially accelerated the borrowers' loan.

BOA appealed the district court's dismissal of its second foreclosure action as time-barred. In addressing BOA's argument, the Florida District Court of Appeals first noted that for acceleration to occur under Florida law, the lender must "exercise [its acceleration] option and . . . give notice to the borrowers that it ha[d] done so.'" *Graybush*, 253 So. 3d at 1191. It then provided the following explanation why Florida's five-year statute of limitations was not triggered upon the borrowers' failure to cure their

15

default by the December 17, 2008 deadline listed in BOA's November 17, 2008 Notice of Intent to Accelerate letter:

"On appeal, both parties correctly acknowledge that the trial court erred in picking December 17, 2008 as the date of acceleration. The Notice of Intent to Accelerate did *not* constitute an acceleration despite its language that the note 'will be accelerated' if the Borrowers failed to cure by that date. [BOA] retained discretion to accelerate at a later date, as the full amount of principal due was not stated—only the amount due for October and any additional regular payments and charges that came due before December 17, 2008. See *Snow* [*v. Wells Fargo Bank, N.A.*], 156 So. 3d at 542 (holding that the portion of a notice letter that stated '[i]f you do not pay the full amount of the default, *we shall accelerate* the entire sum of both principal and interest due and payable . . . ,' did not 'convert[] the optional acceleration into a prospective, self-executing acceleration which was automatically triggered upon the failure of the [borrowers] to cure the default.').

"Just as in *Snow*, the letter here did not indicate that [BOA] was *exercising* its option to accelerate, but only that [BOA] *intended* to accelerate at some point on or *after* December 17, 2008 should the Borrowers fail to cure. Id. at 542; see also *Pino v. Deutsche Bank Nat'l Tr. Co.*, 201 So. 3d 128, 128 (Fla. 3d DCA 2015). [BOA] did not actually accelerate the note until it filed the first complaint and declared all sums immediately due. Typically, when a mortgage contains an optional acceleration clause, '[t]he filing of suit for foreclosure amounts to exercise of the option of the mortgagee to declare the whole of the principal sum and interest secured by the mortgage due and payable.' *Campbell v. Werner*, 232 So. 2d 252, 254 n.1 (Fla. 3d DCA 1970); *see also Reano* [*v. U.S. Bank. Nat'l Ass'n*], 191 So. 3d at 961 (similarly explaining that when a mortgage contains an optional acceleration clause, '[t]he filing of a lawsuit constitutes notice of acceleration.')." 253 So. 3rd at 1191-92.

After providing the preceding explanation why the borrower's failure to cure their default by December 17, 2008, did not trigger Florida's five-year statute of limitations, the Florida District Court of Appeals held that BOA's second foreclosure petition was timely filed as it alleged continuing defaults, "some of which f[e]ll within five years of

16

the filing of [its] complaint." *Graybush*, 253 So. 3d at 1192 (citing *Bartram v. U.S. Bank Nat. Ass'n*, 211 So. 3d 1009, 1016 [Fla. 2016]). Thus, to summarize, the *Graybush* decision stands for the proposition that when the holder of a borrower's note and mortgage sends a letter stating that it may accelerate the borrower's loan on the borrower's future failure to cure his or her default, that letter does not contain adequate notice of acceleration as required to trigger the statute of limitations to foreclose on the borrower's mortgage.

*Wilmington's Foreclosure Petition Was Timely Filed*

Having considered the relevant law on acceleration clauses, we now address Wilmington's argument that K.S.A. 60-511(1)'s five-year statute of limitations was not triggered on the Holversons' failure to cure their default by the February 10, 2011 deadline in BOA's Notice of Intent to Accelerate letter.

As previously flushed out, both Wilmington's and the Holversons' arguments hinge on their interpretation of this court's decision in *FGB Realty*. They agree that the Holversons' note and mortgage contain optional acceleration clauses. But they disagree if BOA's January 11, 2011 Notice of Intent to Accelerate letter provided the Holversons with adequate notice that BOA intended to exercise its option to accelerate their loan's maturity date. To review, the district court accepted the Holversons' argument that Wilmington's foreclosure petition was not timely filed because BOA's January 11, 2011 Notice of Intent to Accelerate letter provided the Holversons with adequate notice that BOA intended to accelerate the Holversons' loan maturity date as of February 11, 2011, which was the date after BOA's February 10, 2011 deadline for the Holversons to cure their default. And it therefore ruled that Wilmington filed its December 14, 2016 foreclosure petition beyond K.S.A. 60-511(1)'s five-year statute of limitations. Nevertheless, a review of BOA's January 11, 2011 Notice of Intent to Accelerate letter shows that in this letter, BOA never clearly and unequivocally expressed its intention to

17

accelerate the Holversons' loan maturity date as required to trigger K.S.A. 60-511(1)'s five-year statute of limitations under this court's *FGB Realty* decision.

Once again, in BOA's January 11, 2011 Notice of Intent to Accelerate letter, BOA told the Holversons the following: (1) that they had the right to cure their default, which currently totaled $5,568.65, "on or before February 10, 2011"; (2) that if they failed to cure their default "on or before February 10, 2011, [their] mortgage payments **[would] be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings [would] be initiated at that time"; and (3) that their "default [would] <u>not</u> be considered cured unless it receive[d] . . . $5,568.65 on or before February 10, 2011."

Yet, in this letter, BOA never told the Holversons that it was going to definitively accelerate their loan. To the contrary, BOA told the Holversons that their loan **"[would] be accelerated**" after February 10, 2011, *"if"* they failed to cure their default. (Italicized emphasis added.) Thus, BOA's use of the word "if" in this letter made its intention to accelerate conditional. The condition or contingency consisted of an external event: the Holversons' ultimate failure to cure their default by the February 10, 2011 deadline. Stated another way, acceleration of the Holversons' loan was not inevitable because BOA had only made a conditional threat to accelerate the Holversons' loan. Again, in *FGB Realty*, this court cited approvingly to the Iowa Supreme Court's holding in *Wentland* that a "'mere threat to commence suit, followed by a subsequent statement that "all is now due,"' [was] not sufficient either to set in motion the limitations statute or to establish an earlier maturity date for any purpose.'" 22 Kan. App. 2d at 855. So the *FGB Realty* decision supports that that BOA's conditional threat to accelerate the Holversons' loan was not a clear and unequivocal expression of its intention to accelerate their loan as required to trigger K.S.A. 60-511(1)'s five-year statute of limitations.

Also, as stressed by Wilmington in its brief, in making its conditional threat to accelerate the Holversons' loan's maturity date, BOA did not definitively state that it would accelerate the Holversons' loan on February 11, 2011, should the Holversons fail to cure their default by the February 10, 2011 deadline. Instead, it stated that if the Holversons failed to cure their default by the February 10, 2011 deadline, their "mortgage payments **[would] be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings [would] be initiated at that time." According to this provision's plain language, there was no fixed date when BOA would accelerate the Holversons' loan. That is, this provision provided that BOA could accelerate the Holversons' loan any time after February 10, 2011, should the Holversons fail to cure their default by this deadline.

Simply put, BOA's indefinite ability to accelerate the Holversons' loan after February 10, 2011, should the Holversons fail to cure their default by that deadline is irreconcilable with this court's holding in *FGB Realty* that a noteholder only triggers K.S.A. 60-511(1)'s five-year statute of limitations when it "clearly and unequivocally express[es] an intention to exercise the option [to accelerate]." 22 Kan. App. 2d at 855. Also, because the plain language of this provision establishes that BOA could accelerate the Holversons' loan's maturity date any time after February 10, 2011, should the Holversons fail to cure their default by this deadline, it necessarily follows that the district court here erred in holding that K.S.A. 60-511(1)'s five-year statute of limitations began to run the day after this deadline passed on February 11, 2011.

Of equal importance, this same provision's plain language ties BOA's ultimate decision to accelerate the Holversons' loan should they fail to cure their default by the February 10, 2011 deadline to filing foreclosure proceedings against the Holversons. This disputed provision has two clauses. The first clause states that if the Holversons failed to cure their default on or before February 10, 2011, their "mortgage payments **[would] be accelerated** with the full amount remaining accelerated and becoming due and payable in

19

full." The second clause states:  "[F]oreclosure proceedings [would] be initiated *at that time*." (Emphasis added.) Here, BOA retained discretion to accelerate at a later date because the full amount of principal due was not stated. For example, only the amount required to cure the default was stated:  $5,568.65. See *Snow v. Wells Fargo Bank, N.A,*, 156 So. 3d 538, 542 (2015) (holding that the portion of a notice letter that stated "[i]f you do not pay the full amount of the default, *we shall accelerate* the entire sum of both principal and interest due and payable. . . .," did not "convert[] the optional acceleration into a prospective, self-executing acceleration which was automatically triggered upon the failure of the [borrowers] to cure the default").

In short, the fact that the plain language of this disputed provision states that foreclosure proceedings would be initiated when BOA accelerated the Holversons' loan is yet another reason why BOA did not clearly and unequivocally express its intention to accelerate the Holversons' loan in its January 11, 2011 Notice of Intent to Accelerate letter. Likewise, the fact that the plain language of this disputed provision states that foreclosure proceedings would be initiated when BOA accelerated the Holversons' loan confirms Wilmington's contention that the Holversons' loan was not accelerated until BOA actually filed its foreclosure petition against the Holversons on January 22, 2013, which stated the full amount of the principal due:  $238,053.18.

Although neither party nor the district court has ever relied on the Florida District Court of Appeals' *Graybush* decision, it is readily apparent that this decision supports the preceding conclusion. For starters, Florida's law regarding what constitutes adequate notice of acceleration is substantially similar to Kansas' law. Once more, in *FGB Realty*, this court held that the holder of a borrower's note and mortgage only triggers Kansas' five-year statute of limitations to foreclose upon the borrower's mortgage if it "clearly and unequivocally express[es] an intention to exercise the option [to accelerate] and then affirmatively act[s] toward enforcing that intention." 22 Kan. App. 2d at 855. Meanwhile, in *Graybush*, the Florida District Court of Appeals explained that a noteholder only

20

triggers Florida's five-year statute of limitations to foreclosure if it "exercise[s]" its acceleration option and "give[s] notice to the borrowers that it has done so." 253 So. 3d at 1191.

And perhaps most significantly, it seems that the BOA Notice of Intent to Accelerate letter at issue in *Graybush* is identical to the BOA Notice of Intent to Accelerate letter at issue here. Although we cannot be certain because the *Graybush* court did not cite the entirety of BOA's Notice of Intent to Accelerate letter, it seems that BOA has a standard letter form entitled Notice of Intent to Accelerate that it sends to all of its borrowers after they start to miss their monthly mortgage payments. In any case, BOA's Notice of Intent to Accelerate letter in this case contains the same language that the Florida District Court of Appeals scrutinized in *Graybush*: "If the default [was] not cured on or before [a certain date,] the [borrower's] mortgage payments **[would] be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings [would] be initiated at that time." 253 So. 3d at 1190.

In summary, because Kansas' law and Florida's law on acceleration clauses are comparable, and because the BOA Notice of Intent to Accelerate letter at issue in *Graybush* is identical to the BOA Notice of Intent to Accelerate letter at issue here, the *Graybush* decision is highly persuasive authority.

Thus, Wilmington has correctly argued that K.S.A. 60-511(1)'s five-year statute of limitations did not start to run against any holder of the Holversons' note and mortgage until BOA filed its January 22, 2013 foreclosure petition against the Holversons. As a result, Wilmington had 5 years and 211 days—the number of days Ashley's federal bankruptcy cases resulted in staying BOA's foreclosure action—to timely file its foreclosure petition against the Holversons. See K.S.A. 60-519 (explaining when lawsuits are stayed by an injunction) and *Turner & Boisseau, Chartered v. Lowrance*, 18 Kan. App. 2d 332, 336, 852 P.2d 517 (1993) (holding that K.S.A. 60-519 requires Kansas

21

district courts to treat bankruptcy proceedings as an injunction that tolls the statute of limitations). This means that Wilmington needed to file its foreclosure petition against the Holversons no later than August 21, 2018. Because Wilmington filed its foreclosure petition on December 14, 2016, Wilmington brought its foreclosure action against the Holversons within K.S.A. 60-511(1)'s five-year statute of limitations. As a result, the district court erred when it granted the Holversons' summary judgment motion based on Wilmington's failure to bring its foreclosure petition within K.S.A. 60-511(1)'s five-year statute of limitations. So we reverse the district court's order of summary judgment in favor of the Holversons and remand to the district court for further proceedings consistent with this opinion.

*Consideration of Wilmington's Remaining Arguments Is Unnecessary*

Because we conclude that Wilmington timely filed its foreclosure petition against the Holversons, we need not consider Wilmington's remaining alternative arguments for relief.

Reversed and remanded for further proceedings consistent with this opinion.